Jeffrey **BATTLES**, as Personal Representative of the Estate of Carna Ann Battles, Deceased, Plaintiff/Appellant,

v.

Michelle Lynn **COUGH**, Jeffrey Andrew Lawmaster, and Jerry Fultz, Defendants,

and

Dick Goetz, and Steam Roller, Inc., d/b/a Blue Rose Cafe, Defendants/Appellees.

No. 86645.

Court of Civil Appeals of Oklahoma, Division No. 3.

May 5, 1997.

Certiorari Denied Oct. 2, 1997.

Stephanie L. Theban, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Tulsa, for Plaintiff/Appellant.

Marylinn M. Gravis, Paulk & Gravis, P.C., Tulsa for Defendant/Appellee, Dick Goetz.

Fred M. Buxton, Robert P. Fitz–Patrick, Hall, Estill, Hardwick, Gable Golden & Nelson, P.C., Tulsa, for Defendant/Appellee, Steam Roller, Inc.

## MEMORANDUM OPINION

ADAMS, Chief Judge.

¶ 1 After a birthday party at the home of Defendant Jerry Fultz, also attended by Defendants Jeffrey Lawmaster and Dick Goetz, Decedent Carna Battles accompanied Fultz, Goetz and Lawmaster to the Blue Rose Cafe, which was owned and operated by Defendant Steam Roller, Inc. (SRI). Battles left the Blue Rose riding on the back of a motorcycle driven by Lawmaster. Tragically, Battles was killed as a result of a collision between that motorcycle and a vehicle driven by Defendant Michelle Cough. As personal representative of Battles' estate, Plaintiff Jeffery Battles filed this wrongful death action alleging that Cough and Lawmaster were liable because of the way they drove their respective vehicles and that Fultz, Goetz and SRI were liable for furnishing alcoholic beverages to Lawmaster at a time when they knew or should have known that he was intoxicated.

¶ 2 Goetz and SRI filed separate motions for summary judgment, attaching relevant evidentiary materials, and Plaintiff responded. The trial court sustained those motions,

granting judgment to Goetz and SRI on Plaintiff's claims. In addition, the trial court made the findings required by 12 O.S.Supp. 1995 § 994(A) in order to make these orders final and immediately subject to appeal. Plaintiff appeals, contending summary judgment was inappropriate.[1]

¶ 3  In addressing Plaintiff's claim that summary adjudication was inappropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and Goetz and/or SRI was entitled to judgment as a matter of law. *Perry v. Green*, 468 P.2d 483 (Okla.1970). All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Plaintiff. *Ross v. City of Shawnee*, 683 P.2d 535 (Okla.1984). We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Cas. Co.*, 698 P.2d 17 (Okla.1985).

## Plaintiff's Claim Against Goetz

¶ 4  Although the evidentiary materials provided by Goetz and Plaintiff might reveal several questions concerning the events of that evening, including whether Goetz had a sufficient "degree of control" over the serving of the alcoholic beverages to be considered a "social host," one undisputed fact renders any other questions irrelevant to the question of Goetz's liability: Goetz was not a vendor of alcoholic beverages. Plaintiff sued Goetz on the theory that he was liable as a "social host" for providing alcoholic beverages to Lawmaster when Goetz knew or had reason to know that Lawmaster was intoxicated. Oklahoma has not adopted "social host" liability.

¶ 5  According to *McClelland v. Harvie Kothe–Ed Rieman, Post No. 1201, Veterans*

*of the Foreign Wars of U.S., Inc.*, 770 P.2d 569 (Okla.1989), until 1986 and the decision in *Brigance v. Velvet Dove Restaurant, Inc.*, 725 P.2d 300 (Okla.1986), Oklahoma followed the common law rule which held a vendor of alcoholic beverages was not liable for injuries caused to third persons as a result of the vendees' consumption of the alcoholic beverages. This rule was based on the view that "it is the · drink's *voluntary consumption* rather than its sale that constitutes the *proximate cause* of the injuries sought to be redressed." *McClelland*, 770 P.2d at 572. (Emphasis in original). We perceive no reason this causation-based rule, at common law, would not be equally applicable when the supplier of the alcoholic beverage did not sell the beverage but merely furnished it.

¶ 6  In *McClelland*, the Oklahoma Supreme Court held injuries occurring prior to the *Brigance* mandate, and thus not covered by its modification of the common law rule, gave rise to no liability. In other words, the common law causation-based rule is the law in Oklahoma except as it has been abrogated in *Brigance* or its progeny. *McClelland* teaches us then, that even if Goetz supplied alcoholic beverages to Lawmaster as a "social host," he has no liability to third persons such as Plaintiff, unless the cause of action recognized in *Brigance* or some later case applies.

¶ 7  *Brigance* involved the seller of alcoholic beverages, and provides no authority for liability under these circumstances by a "social host." The Court expressly noted that "[w]e do not by this opinion address the issue of a social host's civil liability." *Brigance*, 725 P.2d at 306, n. 12. The Court has not addressed the issue of "social host" liability in any subsequent decision.[2] We are not free to extend the reach of *Brigance*, because of the causation-based common law rule applicable to "social hosts," a *Brigance*-type cause of action is not available against indi-

---

1.  The trial court also sustained a summary judgment motion in favor of Fultz and made the findings required by § 994(A) as to him. However, Plaintiff's petition in error relates only to the judgments in favor of Goetz and SRI. Accordingly, we do not consider the trial court's action with regard to Fultz.

2.  In *Kellogg v. Ohler*, 825 P.2d 1346 (Okla.1992), the Court declined to address this issue because it determined that it was undisputed that the Appellees were not "social hosts" as that term was defined in the opinion. However, three justices indicated they would not extend *Brigance* to cover "social hosts."

viduals like Goetz, who are alleged to have been "social hosts." Goetz was entitled to judgment as a matter of law, and the trial court's judgment in his favor is affirmed.

### Plaintiff's Claim Against SRI

¶ 8   SRI premised its motion for summary judgment on the theory that it was uncontroverted that no employee of the Blue Rose served alcoholic beverages to Lawmaster at a time when he was visibly or noticeably intoxicated. SRI relied upon affidavits and deposition testimony from the waitress who served the group including Lawmaster and the bartender on duty that evening, along with an affidavit from the manager on duty that evening. According to all of these witnesses, none of whom remembered serving any drink to Lawmaster that evening, each of them did not, on the evening in question, "serve any drinks to any person who I either knew was intoxicated or who in any way appeared to me to be intoxicated." They each further testified he or she did not observe any waitress or bartender serve drinks to anyone whom the witness knew was intoxicated or who appeared intoxicated in any way to the witness. In addition, SRI relied upon deposition testimony from Goetz that he did not observe Lawmaster to be visibly intoxicated that evening and deposition testimony of other participants in the birthday party, who did not accompany the group to the Blue Rose, that Lawmaster did not appear to be intoxicated at the birthday party.

¶ 9   Plaintiff did not produce any evidentiary material which directly contradicted this evidence, i.e., testimony from a witness that some Blue Rose employee served Lawmaster an alcoholic beverage at a time when he was noticeably or visibly intoxicated. However, Plaintiff did submit evidentiary material which he says created a fact question on this pivotal issue. A portion of that evidentiary material merits special attention to determine whether it may be properly considered under Rule 13, Rules for District Courts, 12 O.S. Ch. 2, App.

■ ¶ 10   Plaintiff submitted a transcription of a recording of a statement made by Lawmaster under questioning by one of Plaintiff's attorneys. This statement was not

given in any court proceeding and was not under oath. The transcript was verified by an affidavit by the attorney who took the statement, who testified that he was present when Lawmaster made the statements contained in the recording and that the transcript was an accurate report of the statements he heard Lawmaster make at that time. The law firm employee who transcribed the recording also provided an affidavit attesting to the accuracy of the transcript made from the recording.

■ ¶ 11   Plaintiff relies upon this statement for many of the "facts" which he says should have alerted Blue Rose employees to Lawmaster's intoxication and therefore made him visibly and noticeably intoxicated. However, Lawmaster's statement cannot be considered in determining SRI's potential liability. According to *Davis v. Leitner,* 782 P.2d 924, 927 (Okla.1989), the evidentiary material attached to a response to a motion for summary judgment need not be admissible in evidence, but must "show the reasonable probability, something beyond a mere contention, that the opposing party will be able to produce competent, admissible evidence at the time of trial which might reasonably persuade the trier of fact in his favor on the issue in dispute." In *Davis,* the controverting facts were contained in a letter in the witness' own handwriting under circumstances suggesting that the writer would be willing to testify to those matters.

¶ 12   Lawmaster's statement differs substantially. Some of the "facts" in Lawmaster's statement appear in the deposition testimony of other witnesses and are properly considered. However, one of the facts crucial to Plaintiff's theory, i.e., that Goetz made improper sexual advances towards Battles, indicating intoxication, appears nowhere else and is based solely on Lawmaster's assertion that Battles told him this occurred. Even if Lawmaster testified at trial to hearing this statement, it would be inadmissible hearsay to prove that Goetz made the alleged advances. Moreover, Plaintiff has not shown that any testimony containing the substance of Lawmaster's statement will be available at trial. As noted by Plaintiff, Lawmaster has been charged with murder as a result of this

**604**

tragic event and cannot be compelled to testify. Lawmaster's statement is not admissible as an admission against SRI. Plaintiff has not shown a reasonable probability that he will be able to produce at trial competent admissible evidence tending to prove the "facts" which appear only in Lawmaster's statement.

¶ 13 As noted in *Frank v. Merciez,* 806 P.2d 1147, 1150 (Okla.App.1991), "[t]he *Brigance* standards for imposition of liability focus on the tavernkeeper/vendor's objective observations and perceptions of a patron's state of intoxication." *Brigance* imposes a duty upon the vendor to use reasonable care to avoid *serving* persons who are, *at the time of service,* noticeably intoxicated. In our opinion, *Brigance* does not create a duty to deny service to individuals who *will or might become intoxicated* as a result of the service of alcoholic beverages. The evidentiary material provided by Plaintiff to demonstrate the "industry standard" for serving alcoholic beverages relates more to this latter approach than the duty recognized in *Brigance.*[3] However, Plaintiff's material did provide some information about the facts Blue Rose employees should have relied upon to determine whether Lawmaster was noticeably intoxicated.

¶ 14 Plaintiff contends there is evidence that Lawmaster and the others in the group consumed twelve bottles of beer and eight mixed drinks in approximately one hour and five minutes. If we assume, as Plaintiff suggests at one point, that each of the four individuals who were drinking consumed an equal share, Lawmaster consumed three bottles of beer and two mixed drinks during that period. Plaintiff contends that is "drinking too fast," one of the signs of intoxication identified in Plaintiff's evidentiary material. According to that material, Lawmas-

ter could probably consume two to three drinks in an hour without becoming intoxicated, and each bottle of beer is equivalent to one mixed drink. According to both parties' evidentiary materials, the group initially ordered four beers, followed by four more beers and four mixed drinks. Absent other conduct, Blue Rose employees could not have concluded Lawmaster was "drinking too fast" until *after* he had consumed more than two beers and one mixed drink in less than one hour. The record is silent concerning the timing of the serving of the last round of beers and mixed drinks. In the absence of that evidence, reasonable people could not reasonably infer that Lawmaster was served alcohol at a time when he was noticeably intoxicated because he had been "drinking too fast."

¶ 15 The only other sign of intoxication listed in Plaintiff's evidentiary material which find any support in the properly considered evidentiary materials is "loud talking."[4] According to Goetz's deposition, at some point during the evening at the Blue Rose, Battles loudly expressed her displeasure with Goetz's suggestion that she not ride on the back of Lawmaster's motorcycle. Even if we assume that Battles' behavior (which might be indicative of her own intoxication) somehow demonstrates noticeable intoxication of Lawmaster, which we do not decide, Plaintiff produced no evidence that this behavior occurred *before* Lawmaster was last served.

¶ 16 Plaintiff also argues that Lawmaster's blood alcohol concentration after the accident was so high that we must allow an inference that he was noticeably intoxicated at the Blue Rose. A similar argument was rejected in *Grantham v. The Tulsa Club, Inc.,* 918 P.2d 410 (Okla.App.1996), and we see no reason to hold differently in this case.

3. Plaintiff relies upon a 1983 training manual promulgated by the National Licensed Beverage Association, entitled *Techniques of Alcohol Management,* a copy of which was attached to the affidavit of a witness who attested to its use in training servers of alcoholic beverages. According to the manual, "[p]reventing the patron from *becoming* intoxicated is our primary goal." (Emphasis added). Plaintiff also uses the manual to suggest that SRI failed to properly train its personnel and lacked clearly stated policies con-

cerning the serving of alcoholic beverages. These alleged deficiencies are irrelevant without proof that they contributed to a violation of the *Brigance* duty, *i.e.,* serving alcoholic beverages to a noticeably intoxicated or apparently intoxicated patron.

4. Plaintiff generally cites to the manual to support his statement that mixing drink types is also indicative of intoxication. We are unable to find any such statement in the manual.

¶ 17 Finally, Plaintiff suggests that because SRI's affidavits are from employees, the credibility of their testimony is in question and must be decided by a jury. Although this principle was recognized as to the affidavit of an "interested witness" in *Poafpybitty v. Skelly Oil Company*, 517 P.2d 432, 438 (Okla.1974), it was limited by the caveat that "such strictness of consideration does not apply to a statement in an affidavit that is uncontroverted and has indication of support elsewhere in the record." As noted in *Frank*, an employee is not an "interested witness" under *Poafpybitty*, and the facts stated in those affidavits find support in the Goetz deposition, and in other evidentiary material with regard to Lawmaster's condition immediately before going to the Blue Rose.

¶ 18 The facts revealed by the evidentiary materials furnished by the parties which could properly be considered by the trial court, considered in the light most favorable to Plaintiff, together with all reasonable inferences from those facts, are consistent only with judgment for SRI. Accordingly, the trial court's judgment in favor of SRI is also AFFIRMED.

CARL B. JONES, P.J., and GARRETT, J., concur.