OSCN Found Document:DEUTSCHE BANK NATIONAL TRUST COMPANY v. ROESLER

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 DEUTSCHE BANK NATIONAL TRUST COMPANY v. ROESLER
2015 OK CIV APP 36
Case Number: 112922
Decided: 03/20/2015
Mandate Issued: 04/15/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 36, __ P.3d __

 

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE3, Plaintiff/Appellee,
v.
FRANK VICTOR ROESLER, JR., Defendant/Appellant,
and
SPOUSE, IF ANY, OF FRANK VICTOR ROESLER, JR.; JOHN DOE, OCCUPANT; BENEFICIAL OKLAHOMA, INC.; and ARROW FINANCIAL SERVICES, LLC, Defendants.



APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE THOMAS E. PRINCE, TRIAL JUDGE



AFFIRMED



Kirk Cejda, Michael K. Templeton, SHAPIRO & CEJDA, L.L.P., Oklahoma City, Oklahoma, for Plaintiff/Appellee
Roland V. Combs, III, THE LAW FIRM OF ROLAND V. COMBS, III & ASSOCIATES, PLC, Oklahoma City, Oklahoma and Sherry Doyle, SHERRY DOYLE, PLLC, Edmond, Oklahoma, for Defendant/Appellant




P. THOMAS THORNBRUGH, JUDGE:


¶1 Frank Victor Roesler, Jr., appeals the summary judgment of the district court in a mortgage foreclosure case. Upon review, we affirm the decision of the district court.

BACKGROUND

¶2 This record begins with a foreclosure action filed in April 2011. The petition alleged that, in January 2006, defendant Roesler executed a note and mortgage for $105,300 payable to WMC Mortgage Company (WMC). The petition alleged that Roesler had defaulted on the note in March 2010.[1]

¶3 Attached to the petition was the note between Roesler and WMC. The note was not endorsed. The petition also stated that the note had been assigned to plaintiff, Deutsche Bank National Trust Company, as Trustee (Deutsche Bank), and that the assignment had been recorded. No copy of the assignment was attached to the petition. Roesler answered, admitting making the mortgage to WMC but denying that Deutsche Bank had any right in the note, or authority to enforce it.

¶4 In November 2011, Deutsche Bank filed a motion for summary judgment, attaching an affidavit attributed to a "Crystal Reyes." The affidavit alleged that Reyes was an employee of "Wells Fargo Bank, N.A.," which was acting as "servicing agent" for Deutsche Bank, which was, in turn, acting as a trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 (Morgan Stanley Trust). The affidavit further stated that the note went into default in March 2011, and that the current balance owed was $ 114,102.84. The summary judgment motion also contained a copy of the note that differed from the copy submitted with the petition, in that it bore an undated endorsement in blank by "Jessica Fuentes" on behalf of WMC. The same space on the note submitted with the petition was blank.

¶5 Roesler replied, alleging, among other arguments, that Deutsche Bank had still not demonstrated standing to enforce the note at the time the petition was filed. Roesler also noted that this was the second time Deutsche Bank had attempted to foreclose on the note, its first foreclosure having been dismissed in July 2010.

¶6 No further action occurred for almost a year. On October 10, 2012, Deutsche Bank apparently moved to amend its petition and, on the same day, the court dismissed the existing petition and granted leave to amend.[2] On October 11, 2012, Deutsche Bank filed what was, in fact, its third petition seeking to foreclose on the note. A copy of the note endorsed in blank by a purported agent of WMC was attached to this amended petition.

¶7 On October 31, 2012, Roesler filed a motion to dismiss. Roesler argued that Deutsche Bank still had not demonstrated the required standing. One year later, in October 2013, the court denied the motion to dismiss. In February 2014, Deutsche Bank again moved for summary judgment. Roesler responded with the following arguments: 1) the only affidavit provided as to default was by an employee of Wells Fargo, and Wells Fargo was a stranger to the note; 2) Deutsche Bank had not demonstrated the required standing at the time the case was filed, and could not do so by filing an amended petition containing a copy of the note with an undated endorsement; 3) the alleged default occurred because either Deutsche Bank or WMC improperly moved for foreclosure in their first two petitions, and Deutsche Bank could not sue based on a default it caused; 4) there was no evidence that the alleged owner of the note, the Morgan Stanley Trust, ever had possession of the note or a right to enforce it; 5) pursuant to applicable New York and federal tax law governing the Morgan Stanley Trust as a "Real Estate Mortgage Investment Conduit" (REMIC), the Morgan Stanley Trust could not acquire any asset after July 24, 2006, and the record showed that, in July 2006, the note was still held by WMC; and 6) Deutsche Bank failed to give the required notice of default before initiating foreclosure.

¶8 In May 2014, the district court granted summary judgment to Deutsche Bank without commenting on these theories. Roesler now appeals.

STANDARD OF REVIEW

¶9 "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." City of Jenks v. Stone, 2014 OK 11, ¶ 6, 321 P.3d 179. "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." Id.

ANALYSIS

¶10 Roesler brings nine allegations of error, paraphrased below as follows:



1. The trial court erred in granting summary judgment to Deutsche Bank when it provided no evidence that it was the holder of the note when the foreclosure was filed.

2. The trial court erred when it accepted the "proffered document as the instrument" when Deutsche Bank did not lay the foundation of the authenticity of the note with a credible witness and testimony.

3. The trial court erred when it placed the burden on Roesler to disprove the authenticity of the proffered document as the alleged original note rather than requiring Plaintiff to prove its allegation.

4. The trial court erred in granting summary judgment to Deutsche Bank because Deutsche Bank did not support its self-serving statements in its Affidavit with admissible evidence.

5. The trial court erred in granting summary judgment to Deutsche Bank when Deutsche Bank provided no evidence to show that the affiant, an employee of Wells Fargo, was competent to testify on behalf of Deutsche Bank.

6. The trial court erred in granting summary judgment to Deutsche Bank when Deutsche Bank did not provide evidence of and prove delivery of the note.

7. The trial court erred in granting summary judgment to Deutsche Bank when the only dated document presented by Deutsche Bank conflicts with the terms of the Pooling and Servicing Agreement governing acceptance of the note by the Trust, showing that Deutsche Bank was barred from accepting the note into the Trust; and therefore, Deutsche Bank does not have standing.

8 The trial court erred in granting summary judgment to Deutsche Bank because Deutsche Bank's pleadings conflicted with prior pleadings. Specifically, Deutsche Bank alleged a "true and correct copy" of the note had been attached to the previous petition; however, that conflicted with the "true and correct copy" of the note attached to the petition in the case at hand.

9. The trial court erred in granting summary judgment to Deutsche Bank when Deutsche Bank alleged a default date during a time in which it had already filed a previous foreclosure action, but after the date alleged in the prior foreclosure petition.



We will address these allegations in turn.

I. The Trial Court Erred In Granting Summary Judgment to Plaintiff When It Provided No Evidence That It Was the Holder of the Note When the Foreclosure Was Filed

A. Standing in Foreclosure Cases

¶11 In 2012-2013, the Oklahoma Supreme Court issued several substantive opinions addressing the standing of a party to enforce a note and foreclose the associated mortgage. Those opinions held that, in order to have standing to sue for foreclosure, a plaintiff must have, and demonstrate, the right to enforce the subject note at the time of filing. Wells Fargo Bank, N.A. v. Heath, 2012 OK 54 ¶ 9, 280 P.3d 328, notes that:



To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff lacks standing . . . Appellee has the burden of showing it is entitled to enforce the instrument . . . Unless the Appellee was able to enforce the note at the time the suit was commenced, it cannot maintain its foreclosure action against the Appellants.



Id. (citation omitted).

¶12 The Supreme Court set a simple procedure to enforce these requirements by requiring a prima facie showing of the right to enforce. A foreclosing party may, at the time of filing, attach a copy of a suitably endorsed note demonstrating possession and a right to enforce, or some other paper demonstrating the rights of a holder. If it does not do so, the petition is subject to dismissal. The defect may be cured by later submission of some document showing a prima facie right to enforce at the time the petition was filed. However, evidence produced after the petition, and showing only a right to foreclose at an unspecified time, does not meet this burden.

¶13 Examining the record in this case, it is clear that Deutsche Bank's petition did not make the required showing of its right to enforce the note at the time of its initial filing. The petition contained a note between Roesler and WMC with no endorsement. Although Deutsche Bank later supplied a copy of the note endorsed in blank, the endorsement was not dated. As such, it could not establish that Deutsche Bank had a right to enforce in April 2011.[3]

¶14 We emphasize that the jurisdictional showing required by the Supreme Court in these foreclosure cases is only that of a prima facie right to enforce. Possession of a suitably endorsed note is prima facie evidence of ownership by the holder. Cahill v. Kilgore, 1960 OK 88, ¶ 15, 350 P.2d 928. This showing does not indisputably establish the legal right to foreclose, but only that a justiciable case for foreclosure, i.e., standing, exists.

¶15 We emphasize this distinction because this Court has received an increasing number of submissions arguing that any and all questions regarding the final validity or enforceability of a note have become "standing" issues, and hence "jurisdictional" issues. We state emphatically that attaching a copy of a facially enforceable note to a petition establishes a prima facie case for standing. All further questions regarding the final legal right of a plaintiff or claimant to foreclose on the note remain merits questions.[4]

¶16 Deutsche Bank argued that it recorded a transfer of a mortgage on the subject property prior to foreclosure; that this transfer of the mortgage purported to also transfer the note; and that this evidences a right to enforce in March 2011. Oklahoma jurisprudence is clear that the right to enforce the note is fundamental in these cases, and that the mortgage follows the note, not vice versa. "An assignment of the mortgage, however, is of no consequence because under Oklahoma law '[p]roof of ownership of the note carried with it ownership of the mortgage security.'" Deutsche Bank Nat'l Trust Co. v. Byrams, 2012 OK 4 ¶ 5, 275 P.3d 129, (quoting Engle v. Fed. Nat'l Mortg. Ass'n, 1956 OK 176, ¶ 7, 300 P.2d 997). "Therefore, in Oklahoma it is not possible to bifurcate the security interest from the note." Byrams, ¶ 4. The transfer of a mortgage does not create a right to enforce an associated note. The transfer of a note creates a right to enforce an associated mortgage.

B. The Amended Petition

¶17 On October 11, 2012, with court permission, Deutsche Bank filed an amendment to its dismissed April 2011 petition. The amended petition contained the same note, with an undated endorsement in blank, that Bank had submitted as part of its prior summary judgment motion. Deutsche Bank argues that this procedure cured the failure to make the required prima facie showing of a right to enforce pursuant to HSBC Bank USA v. Lyon, 2012 OK 10, 276 P.3d 1002.

¶18 Although the Supreme Court does not appear to have explicitly stated so, the procedure approved in Lyon inherently holds that an "amended" petition filed after a dismissal is legally an initial petition for the purposes of "standing" to enforce a note, even though it is filed under the same case number. Otherwise, the submission of a note with an undated endorsement with the amended petition still would not cure the defect, because it would not show that a plaintiff had a right to enforce at the time the case was originally filed. In this case, the undated endorsement to the note does show a right to enforce at the time of "amendment." This is sufficient to cure the standing defect pursuant to Supreme Court precedent. Hence, Deutsche Bank first made the required showing of a right to enforce in its amended petition of October 11, 2012.

II. The Trial Court Erred When It Accepted the Proffered Document As the Instrument When Plaintiff Did Not Lay the Foundation of the Authenticity of the Note with a Credible Witness and Testimony.

¶19 In response to Deutsche Bank's final summary judgment motion, Roesler admitted making the note, and stated that he did not dispute the authenticity of the signatures on it. He stated, however, that there was "no evidence that the piece of paper [plaintiff] had in its possession is the note." He further denied that "WMC holds the note."[5] The record indicates that Deutsche Bank produced the note for Roesler's inspection; that it provided an affidavit from the Vice President of Loan Documentation of Wells Fargo stating that Wells Fargo acted as "servicer" of the loan for Deutsche Bank; and that Deutsche Bank was in possession of the note.

¶20 The record is clear that Deutsche Bank showed actual physical possession of Roesler's note, endorsed in blank as bearer paper. Possession of a suitably endorsed note is prima facie evidence of ownership by the holder. Cahill v. Kilgore, 1960 OK 88, ¶ 15, 350 P.2d 928. "Prima facie evidence is such evidence as in the judgment of law is sufficient to establish a fact, and if not rebutted, remains sufficient to establish that fact." Matter of Estate of Hardaway, 1994 OK 30, ¶ 15, 872 P.2d 395. A proper foundation was established for introduction of the note.

III. The Trial Court Erred When It Placed the Burden on Defendant to Disprove the Authenticity of the Proffered Document As the Alleged Original Note Rather Than Requiring Plaintiff to Prove Its Allegation.

¶21 As noted above, production of the blank endorsed note constituted prima facie evidence of a right to enforce. The burden then shifted to Roesler to rebut the presumption of authenticity. Cahill, 1960 OK 88, ¶ 15.

IV. The Trial Court Erred In Granting Summary Judgment to Plaintiff Because Plaintiff Did Not Support Its Self-Serving Statements in Its Affidavit with Admissible Evidence

¶22 Roesler next argues that the court should have disregarded the supporting affidavit from the Vice President of Loan Documentation of Wells Fargo because it was self-interested, and therefore not "admissible evidence." Roesler apparently relies on the rule of Poafpybitty v. Skelly Oil Co., 1973 OK 110, 517 P.2d 432, which states that, when an affiant has an interest in the result of a suit, the credibility of his testimony is to be submitted to the jury as a question of fact. Id., ¶¶ 16-17. It appears from the record that "the Vice President of Loan Documentation" is an employee of Wells Fargo. He is not personally a party, and we find no record that he has a direct personal interest in the foreclosure of this note. An employee who is neither subject to personal liability by a suit, nor a direct beneficiary of a suit, is not an "interested party" pursuant to Poafpybitty. See Battles v. Cough, 1997 OK CIV APP 62, ¶ 17, 947 P.2d 600; Frank By & Through Gray v. Merciez, 1991 OK CIV APP 14, 806 P.2d 1147. The district court did not err by considering this affidavit as evidence on summary judgment.

V. The Trial Court Erred In Granting Summary Judgment to Plaintiff When Plaintiff Provided No Evidence to Show That Affiant, An Employee of Wells Fargo, Was Competent to Testify on Behalf of Plaintiff, Deutsche Bank.

¶23 The affidavit in question stated the affiant had been duly sworn; was authorized to make the affidavit on behalf of Deutsche Bank; had examined the regularly kept business records of Wells Fargo regarding the note and mortgage; and had personal knowledge of them. This affidavit indicated that the affiant was competent to give evidence. It did not inherently lack credibility. The burden then shifted to Roesler to show some question of material fact as to this evidence. Reeds v. Walker, 2006 OK 43, ¶ 32, 157 P.3d 100.

VI. The Trial Court Erred In Granting Summary Judgment to Plaintiff When Plaintiff Did Not Provide Evidence of and Prove Delivery of the Note.

¶24 Roesler's brief in opposition to summary judgment argues that the fact that the blank endorsement on the note is undated means that "the court [cannot] determine whether an actual transfer and delivery of the note has occurred." Delivery is defined as the voluntary transfer of possession. 12A O.S.2001 § 1-201(b)(15). The transferee would then be vested with any right of the transferor to enforce the note. 12A O.S.2001 § 3-203(b). In its response, Deutsche Bank stated it had produced the original note, with endorsement, for inspection by the court and defendant. Roesler did not dispute this fact. Possession was therefore shown, and there was no evidence that Bank's possession was due to anything other than a voluntary transfer. Thus, the delivery requirement was met.

VII. The Trial Court Erred In Granting Summary Judgment to Plaintiff When the Only Dated Document Presented by Plaintiff Conflicts with the Terms of the Pooling and Servicing Agreement Which Governs Acceptance of the Note by the Trust, Showing That Plaintiff Was Barred from Accepting the Note Into the Trust; Therefore, Plaintiff Does Not Have Standing.

¶25 Variations on this argument have been raised in a number of recent appeals. Generally, the defendant argues that the owner of the note is some form of specialized trust which, according to its trust agreement, can only accept assets during a limited period (often one year and three months after the trust opens). The defendant then argues that, because the endorsement is undated, there is no evidence the note was transferred to the trust within this time frame, and hence no evidence of a "right to enforce."

¶26 Roesler frames this issue as one of standing. As we have previously noted, the presentation of a facially valid note satisfies the initial standing inquiry, and the question of the final right to enforce becomes a merits question. The issue does, however, implicate standing in another way, because the Morgan Stanley Trust is not barred from owning the note as a matter of mortgage law, but is allegedly barred by the Trust's own operating agreement. The initial question is, therefore, whether Roesler has standing to challenge the acceptance of an asset into the Trust outside the period specified by the trust agreement?

¶27 We are directed to no Oklahoma precedent on this issue, and find little other authority. However, in In re Almeida, 417 B.R. 140, 149 (Bankr. D. Mass. 2009), a federal bankruptcy court generally assessed whether a stranger to a trust may challenge whether the trust's regulations were followed in the acquisition or transfer of an asset. The Almeida court noted:



A failure to follow this protocol--such as by direct assignment of the mortgage from the loan originator to the pool trustee, bypassing the depositor--would, the Debtor contends, constitute a breach of the PSA [Pooling and Service Agreement], a breach of fiduciary obligations under the PSA to investors, a breach of federal regulations, and an act giving rise to unfavorable tax consequences for the investors. The Debtor argues that because the Confirmatory Assignment is a direct assignment from Argent to Deutsche Bank that bypasses the depositor, it must be invalid. This argument falls far short of its goal. Even if this direct assignment were somehow violative of the PSA, giving rise to unfavorable tax, regulatory, contractual, and tort consequences, neither the PSA nor those consequences would render the assignment itself invalid. In fact, under the Debtor's own argument, the unfavorable consequences could and would arise only if, and precisely because, the assignment were valid and effective (emphasis added).



That court further noted that the debtor



[i]s not a third party beneficiary of the PSA, and, ironically, he would appear to lack standing to object to any breaches of the terms of the PSA. It would appear to this Court that the investors who bought securities based upon the pooled mortgages would be the parties with standing to object to any defects in those mortgages resulting from any failure to abide by the express provisions of the PSA.



Id., n. 4.

¶28 We reach the same conclusion in this case. Whether the Morgan Stanley Trust may suffer adverse regulatory or tax consequences, or even be subject to suit by its beneficiaries because of a transfer outside of the stated period for accepting assets is not a claim Roesler has standing to raise.

VIII. The Trial Court Erred in Granting Summary Judgment to Plaintiff Because Plaintiff's Pleadings Conflicted with Prior Pleadings. Specifically, Plaintiff Alleged a "True and Correct Copy" of the Note Had Been Attached to the Previous Petition; However, That Conflicted with the "True and Correct Copy" of the Note Attached to the Petition In the Case At Hand.

¶29 The allegation revolves around the fact that Deutsche Bank's first record petition contained a copy of an unendorsed note, while the amended petition contained a copy of an endorsed note, both of which were stated to be "true and correct" copies. Roesler argues that a question of material fact therefore exists.

¶30 Roesler's proposition is entirely incompatible with the procedure endorsed by the Supreme Court in Lyon. Lyon is clear that the failure to submit an appropriately endorsed note can be cured by dismissing the suit and filing an amended petition with an appropriately endorsed note. In Lyon, the originally submitted note was facially deficient as it was not properly endorsed. Lyon, 2012 OK 10, ¶ 10. HSBC dismissed and re-filed, attaching a note with a blank indorsement from the original lender. Id. The Supreme Court affirmed summary judgment on the re-filed note. Id. This result would be impossible if the two notes were deemed to have created a "material question of fact." We therefore reject this proposition of error.

IX. The Trial Court Erred In Granting Summary Judgment to Plaintiff When Plaintiff Alleged a Default Date During a Time In Which It Had Already Filed a Previous Foreclosure Action, but After the Date Alleged In the Prior Foreclosure Petition.

¶31 Deutsche Bank's first record petition alleges that Roesler defaulted on the March 1, 2010 payment. In its first motion for summary judgment, Deutsche Bank alleged by affidavit that default occurred on this date, and had not been cured. In its amended petition, Deutsche Bank again alleged that Roesler defaulted on the March 1, 2010 payment. In its second motion for summary judgment, Deutsche Bank again alleged by affidavit that default occurred on this date, and had not been cured. The record before us shows no inconsistency in the default date. Roesler brought no evidence that he had paid, or attempted to pay, the mortgage after this date.

¶32 Attempting to decode the exact meaning of "Plaintiff alleged a default date during a time in which it had already filed a previous foreclosure action, but after the date alleged in the prior foreclosure petition," we note that Roesler apparently argues one of two theories. The first is that WMC had attempted to foreclose on the mortgage in 2009, alleging an earlier default date, and had then dismissed that petition, creating a "question of fact" as to the default date.

¶33 This proposition may argue that a foreclosing party must state the exact and actual date of any default pursuant to the terms of the note, and that any contradictory statements as to this date render summary judgment inappropriate. We disagree. The note itself is clear that the right to declare default belongs to the holder. If the note is in default pursuant to its terms, the holder has a right to declare the whole amount due and bring a foreclosure action at any future time within the statute of limitations.

¶34 Simply put, a holder does not lose any right to foreclose because the payor defaults on one date, but the holder does not declare default until a later date. Beyond the fact that a default has occurred, the default date becomes significant only if it is a disputed material fact used in calculating the amount the defaulting party owes the holder. We are directed to no evidence that using March 1, 2010, as the default date adversely affected the calculation of any amount due from Roesler.

¶35 Roesler's second theory appears to be that, when the initial petition was dismissed and the amended petition was filed, the default somehow ceased to exist, and hence Deutsche Bank was required to allege a new default date. We find no law indicating that the dismissal of a petition cures a default or changes the default date. We find no error in the summary judgment based on the alleged date of default.

CONCLUSION

¶36 We find no error in the district court's summary judgment. Accordingly, the judgment is affirmed.


¶37 AFFIRMED. 



RAPP, P.J., and BARNES, J., concur.



FOOTNOTES


[1] The record indicates that WMC attempted to foreclose on the note in 2009, but dismissed that petition. We have no record of this first attempted foreclosure. For clarity, we will refer to the 2011 foreclosure petition as the first record foreclosure.



[2] The court evidently recognized the defective nature of the showing of standing in the April 2011 petition, and dismissed with leave to amend pursuant to current Supreme Court precedent.



[3] In fact, Deutsche Bank stated that the unendorsed note was a "true and correct" copy of the note at the time of filing, indicating that the endorsement was made after the petition was filed.



[4] If the entire question of whether a plaintiff has a right to enforce a contract is a "standing" issue, no plaintiff ever loses such a claim "on the merits," but simply "loses standing" when a claim is adjudicated and denied, and all questions regarding a judgment are therefore "standing" questions.



[5] The purpose of this denial is uncertain, given that WMC made no entry of appearance or claim to be the owner, the holder, or the foreclosing party.










 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1991 OK CIV APP 14, 806 P.2d 1147, 62 OBJ 1095, Frank By and Through Gray v. Merciez
Discussed
 1997 OK CIV APP 62, 947 P.2d 600, 68 OBJ 3671, Battles v. Cough
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1994 OK 30, 872 P.2d 395, 65 OBJ 959, In the Matter of the Estate of Hardaway
Discussed
 1956 OK 176, 300 P.2d 997, ENGLE v. FEDERAL NATIONAL MORTGAGE ASSOCIATION
Discussed
 1960 OK 88, 350 P.2d 928, CAHILL v. KILGORE
Discussed at Length
 1973 OK 110, 517 P.2d 432, POAFPYBITTY v. SKELLY OIL COMPANY
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 2012 OK 4, 275 P.3d 129, DEUTSCHE BANK NATIONAL TRUST COMPANY v. BYRAMS
Discussed
 2012 OK 10, 276 P.3d 1002, HSBC BANK USA v. LYON
Discussed at Length
 2012 OK 54, 280 P.3d 328, WELLS FARGO BANK, N.A. v. HEATH
Discussed
 2014 OK 11, 321 P.3d 179, CITY OF JENKS v. STONE
Discussed
Title 12A. Uniform Commercial Code
 Cite
Name
Level

 12A O.S. 1-201, General Definitions and Principles of Interpretation
Cited
 12A O.S. 3-203, Transfer of Instrument; Rights Acquired by Transfer
Cited