### 2017 OK 82

Michael BOYLE, Personal Representative of the Estate of Pamela R. Cain, Deceased and Ashley N. Haas, Plaintiffs/Appellants,

v.

ASAP ENERGY, INC., Fast Lane Stores Inc., d/b/a Fast Lane 3, Defendants/Appellees,

and

George Carothers, Black Hole Investments, LLC, d/b/a The Pit Stop, John Doe Members of Black Hole Investments, LLC, d/b/a The Pit Stop, Two B Sisters, Ltd, d/b/a The Country Palace and John Doe Members of Two B Sisters, Ltd d/b/a The Country Palace, Defendants.

Case Number: 112682

Supreme Court of Oklahoma.

Decided: 10/24/2017

Rehearing Denied: 12/11/2017

---

53. 85 O.S.Supp.2005 § 171.

55. 2015 OK 64, 360 P.3d 499.

56. *Id.* ¶ 17, 360 P.3d at 507.

G. Todd Ralstin, Oklahoma City, Oklahoma, for Plaintiff/Appellant, Michael Boyle, as Personal Representative of Pamela Cain Deceased.

Ryan M. Oldfield, Oldfield & Buerlger, P.L.L.C., Oklahoma City, Oklahoma, for Ashley N. Haas, Plaintiff/Appellant.

Stephen D. Beam, Weatherford, Oklahoma, for ASAP Energy, Inc., and Fast Lane Stores, Inc., Defendants/Appellees.

Bruce Winston, Walker, Ferguson & Ferguson, Oklahoma City, Oklahoma, for ASAP Energy, Inc. And Fast Lane Stores, Inc., Defendants/Appellees.

EDMONDSON, J.

¶ 1 Plaintiffs brought an action in the District Court for Custer County and claimed a convenience store negligently and recklessly sold low-point beer to a noticeably intoxicated person who injured plaintiffs in a vehicle collision several hours later. Defendant filed a motion for summary judgment which was granted by the trial court.[1] We reverse the judgment of the District Court.

---

1. The style of the appeal appears to indicate more than one defendant as an appellee. However, the Journal Entry of Judgment states that judgment was granted to "ASAP Energy, Inc. d/b/a Fast Lane Stores," and the trial court directs this ruling to dispose "of all claims against

¶ 2 Two issues are raised in this appeal. First, does Oklahoma jurisprudence recognize a cause of action against a commercial vendor of alcohol who sells alcohol to a noticeably intoxicated adult for consumption off of the premises when the sale results in an injury to an innocent third party? We hold Oklahoma does recognize this cause of action. Second, were the facts submitted during the process for summary judgment sufficient to show a controverted issue of fact or a difference in inferences sufficient to reverse the trial court's summary judgment? We answer this question also in the affirmative.

### Challenge to the Record On Appeal

¶ 3 This proceeding is an appeal which requires completion of an appellate record using the procedure pursuant to Oklahoma Supreme Court Rule 1.36. A record prepared by conventional means (as opposed to electronic filing) in accordance with this rule requires the parties to file in this Court photocopies from the original trial court record.[2] Fast Lane objects to part of the appellate record submitted by plaintiffs, specifically Shannon Keeves' response to Fast Lane's motion for summary judgment. The objection is based upon the allegation that this response was filed in the District Court for Beckham County[3] and not filed in the Custer County case until after the trial court granted summary judgment which is the judgment appealed in the current appeal/certiorari proceeding.

¶ 4 The plaintiffs' response to Fast Lane's motion for summary judgment in the Custer County case is part of the record on appeal before us. That response states that it "incorporates the Response of Plaintiff, Shannon Keeves, to Defendant, ASAP Energy, Inc.'s Motion for Summary Judgment, as if fully set forth herein and in Beckham County, Oklahoma Case No. CJ-2012-118."

¶ 5 Adoption by reference, sometimes called incorporation by reference, is permitted by the Oklahoma Pleading Code, 12 O.S. 2011 2010(C). This provision was taken directly from Federal Rule of Civil Procedure 10(c).[4] We have construed 2010(C) and found the federal jurisprudence on Federal Rule 10(c) to be instructive for construing 2010(C).[5] The Committee Comment to 2010(C) states "While allegations from other pleadings or motions in the same action may be incorporated by reference, allegations from pleadings or motions in other actions, even if between the same parties cannot." [6]

---

**3.** Defendant points to the Custer County District Court Clerk file stamp bearing a date after the motion for summary judgment was granted.

**4.** Okla. Stat. Ann. Title 12, 2010 (West 2010) Oklahoma Committee Comment to Section 2010 Subsection C.

**5.** *Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, n. 10, 958 P.2d 128, 136 (explaining Rule 10(c) and a motion to dismiss is not converted to a motion to summary judgment by attaching thereto a document which plaintiff had incorporated by reference in plaintiff's petition).

**6.** Oklahoma Committee Comment to Section 2010 Subsection C, *supra*, citing *Texas Water Supply Corp. v. R.F.C.*, 204 F.2d 190, 196 (5th Cir.1953) ("Rule 10(c), Federal Rules of Civil Procedure, permits references to pleadings and exhibits in the same case, but there is no rule permitting the adoption of a cross-claim in a separate action in a different court by mere reference."). *See also Aronson v. Advanced Cell Technology, Inc.*, 972 F.Supp.2d 123, 136 ("A pleading may not adopt other pleadings from a wholly separate action.") citing *Constellation Energy Commodities Group, Inc. v. Transfield ER Cape*

---

this Defendant." We accordingly refer to the defendant or appellee in this appeal using a singular and not plural form.

**2.** 12 O.S.Supp. 2013 Ch. 15, App. 1, Okla. Sup. Ct. R. 1.36 (d)(2), states in part:

(2) Conventional Means: Where the OUCMS is not implemented in both the district and appellate court at the time the appeal is commenced, the record shall be filed by appellant as a separate document, not attached to the petition in error. The record shall be titled "Record on Accelerated Appeal," and shall be preceded by a separate page containing signature of counsel (or pro se parties) and a certificate of service, followed by an "Index to Contents of Record." The index shall use numeric references which shall correspond to tabs for each of the documents or transcripts included in the record. The record shall consist of copies of instruments authorized by Rule 1.36(c), selected for inclusion by the appellant. To the front of the original and each of the copies of the record there shall be appended the court clerk's certificate identifying each of the included instruments as a true and correct copy of the original on file in the court clerk's office. . . .

An appellant has a burden to present a record on appeal that demonstrates the alleged error in the trial court's decision.[7] Any material incorporated by reference in the trial court *must* actually appear in an appellate record when that material is used to either support or attack the judgment or order that is the subject of the appeal. Further, that material *must have actually been before the trial court when it ruled on a motion for summary judgment.*[8] We need not address the merits of plaintiffs' claims Fast Lane acquiesced in plaintiffs' pleading practice, or the legal effect, if any, of such acquiescence if it indeed occurred. We need not address permissible methods for how, when, or what purposes, a document filed in one court may be judicially cognizable in a different court.

██ ¶ 6 In a strict sense, a judgment or appealable order is that which is appealed and not a "case."[9] The "Journal Entry of Final Judgment" was filed in the Custer County case and grants a motion for summary judgment to one party, "ASAP Energy, Inc./ d/b/a Fast Lane Stores."[10] The appellate record herein contains two responses by plaintiffs to defendant's motion for summary judgment, one in the Custer County case and one in a Beckham County case. The response filed in the Custer County case is sufficient to show the trial court's judgment is erroneous and defendant was not entitled to a judgment on the merits, and we need not rely on the Beckham County filing in this appeal.[11]

Summary Judgment and Appellate Review

██ ¶ 7 The standard for appellate review of a summary judgment is *de novo* and an appellate court makes an independent and nondeferential review testing the legal sufficiency of the evidential materials used in support and against the motion for summary judgment.[12] Summary judgment is proper

*Ltd.*, 801 F.Supp.2d 211, 223 (S.D.N.Y.2011) (same); 5 Wright & Miller, Federal Practice and Procedure: Civil 1326 (1969 volume citing *Texas Water Supply, supra.*).

7. *Mustang Run Wind Project, LLC v. Osage County Bd. of Adjustment*, 2016 OK 113, n. 14, 387 P.3d 333, citing *Ray v. Ray*, 2006 OK 30, ¶ 12, 136 P.3d 634, 637 and *Pracht v. Oklahoma State Bank*, 1979 OK 43, 592 P.2d 976, 978.

8. *Frey v. Independence Fire and Casualty Company*, 1985 OK 25, 698 P.2d 17, 20 ("The ruling on a motion for summary judgment must be rested on the record which is then before the court rather than on one that could have been assembled.").

9. 12 O.S. 2011 952:
(a) The Supreme Court may reverse, vacate or modify judgments of the district court for errors appearing on the record, and in the reversal of such judgment may reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof.
(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:
1. A final order;
2. An order that discharges, vacates or modifies or refuses to vacate or modify a provisional remedy which affects the substantial rights of a party; or grants, refuses, vacates, modifies or refuses to vacate or modify an injunction; grants or refuses a new trial; or vacates or refuses to vacate a final judgment;
3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. If the Supreme Court assumes jurisdiction of the appeal, it shall indicate in its order whether the action in the trial court shall be stayed or shall continue. The failure of a party to appeal from an order that is appealable under either subdivision 2 or 3 of subsection (b) of this section shall not preclude him from asserting error in the order after the judgment or final order is rendered.

10. O.R. Vol. 3 of 3, at Tab 15, Journal Entry of Final Judgment, District Court of Custer County, No. CJ-2012-73, Feb. 24, 2014.

11. The response filed in the Custer County case addresses facts it alleges are controverted, contains legal argument, and has attached as exhibits excerpts of depositions from George Carothers, and Joshua Dodge (defendant's employee), and Laquita Harris (defendant's employee), and Chrissie Lomax (friend of Carothers); and exhibits showing ASAP's employee file on Joshua Dodge; OSBI report of Carothers' BAC; Elk City Police Department Incident Reports and witness statements; statement of a person at the scene of the collision identifying beer cans on the ground; estimation of BAC exhibit; ASAP's policy for intoxicated customers; and an affidavit from plaintiffs' expert witness.

12. *Nelson v. Enid Medical Associates*, 2016 OK 69, ¶ 7, 376 P.3d 212, 216; *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, 743 P.2d 682,

when a party is entitled to judgment "as a matter of law" based upon the submitted evidentiary materials, and all inferences and conclusions to be drawn must be viewed in a light most favorable to the party opposing the motion.[13] Summary judgment is improper when reasonable persons may reach different inferences or conclusions from the undisputed facts.[14]

### The Record

¶ 8 Carothers consumed alcohol and caused a vehicular homicide and permanent injuries to two additional people. Plaintiffs' state Carothers started drinking alcohol in the morning, and between 8:30 a.m. and 5:00 p.m. he consumed 18-21 beers, 3-4 shots of vodka, and 2 "sips of moonshine." Plaintiffs alleged he consumed 14-16 beers at a golf tournament and one sip of moonshine on the day of the homicide. The golf tournament at Roman Nose State Park ended at approximately 2:00 p.m., and he returned home at 3:20 p.m. He testified that when he returned to his truck to drive home he "was probably beginning to sober up a little bit."

¶ 9 Carothers stated he did not remember what he did upon returning home, except that he grilled chicken for dinner, drank 4-5 beers from his cooler, 3-4 shots of vodka, and an additional sip of moonshine. He stated the beers were from his golf game. Defendant's motion for summary judgment agrees that Carothers attended a charity golf tournament where he consumed "approximately fourteen to sixteen beers" and "a sip of moonshine."

¶ 10 He drove himself to a Fast Lane convenience store in Clinton at approximately 5:17 p.m., and with a credit card bought a 9-pack of low-point Miller Lite beer containing 16 ounce cans and a pack of cigarettes. The beer is located in the back of the store

and Carothers was required to walk to the back of the store and then to the front to pay for his purchase. When purchasing the cigarettes he was required to talk with Fast Lane's employee, Mr. Dodge, and indicate his desired purchase.

¶ 11 Carothers remembers some of the events that day, but does not remember going to Fast Lane and purchasing beer. He testified he typically drank Miller Lite beer and because he often smoked cigarettes when drinking he would often buy cigarettes when buying beer. He stated Fast Lane was a convenient place for him to stop because it is located between his house and Interstate 40. He also stated he did not know the Fast Lane employees and they did not know him, however Fast Lane was one of two locations he purchased gasoline.

¶ 12 Carothers returned home after his purchase of beer, and then left at approximately 9:00 p.m. to attend a party in Elk City. Carothers testified when he left his home to attend the party he was "worried" about his "ability to drive," but he wanted "to do something, to get out of the house." He testified he was "drunk" when he arrived at the party, and had "one shot of vodka" at the party but no more because "I'd had enough." He stated no beer was served at the party.

¶ 13 At approximately 11:00 p.m. and five to six hours after the Fast Lane sale, Carothers was driving his vehicle, a pickup truck, and ran a four-way stop at a high rate of speed and collided with another vehicle resulting in the death of Pamela Crain and allegedly permanently injuring Ashley Haas and Shannon Keeves. Haas was driving the other vehicle, allegedly a "Take Out Taxi," a sober ride taxi service for Elk City, Oklahoma, and both Crain and Keeves were passengers. Haas was giving Keeves a ride from her home to her workplace when the collision occurred.

685 (Approved for Publication by the Oklahoma Supreme Court).

13. *Nelson v. Enid Medical Associates*, 2016 OK 69, ¶ 7, 376 P.3d at 216; *Brown v. Patel*, 2007 OK 16, 39, 157 P.3d 117, 130. *See also Watkins v. Central State Griffin Memorial Hospital*, 2016 OK 71, ¶ 20, 377 P.3d 124, 130 ("We have consistently held that summary judgment should be denied where there are controverted material facts.").

14. *Bird v. Coleman*, 1997 OK 44, 939 P.2d 1123, 1127 ("Even when basic facts are undisputed, motions for summary judgment should be denied if, under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts.").

¶ 14 Empty beer cans, allegedly Miller Lite cans, were observed on the roadway near Carothers' truck at the scene of the collision. Carothers testified there were no empty beer cans in his truck or cooler when he left the golf course earlier in the day. Carothers was observed at the scene of the collision having bloodshot eyes, slurred speech, and a staggering gait. He failed a "Walk and Turn" test three times at the scene. Carothers' blood was drawn at approximately 11:45 p.m., and he had a blood alcohol content of 0.29g% (0.29 gm/100 ml).

¶ 15 An employee of Fast Lane, Mr. Dodge, stated he (1) does not sell beer to a customer who appears to be intoxicated, (2) has refused sales to such customers, Fast Lane having a policy prohibiting sales to customers who appear intoxicated, and (3) has no independent recollection of the transaction involving the sale of beer to Carothers. Defendant's motion for summary judgment states Fast Lane has a policy prohibiting sales to customers who appear intoxicated and provides training to new employees for the purpose of determining whether a customer appears to be intoxicated.

¶ 16 Defendant also points to "some fifty texts" messages exchanged between Carothers and another individual between 3:30 p.m. and 5:00 p.m. on the day he purchased the beer. The recipient of the messages stated she had "zero indication" Carothers could have been intoxicated at that time. Defendant also argues "[t]here is no evidence whether or not before the accident Mr. Carothers drank the Miller Lite that he had purchased that afternoon at the Fast Lane store." Defendant points to the depositions of the plaintiffs and the fact that none of them were in the Fast Lane store when Carothers made his purchase and none have the ability to state he was visibly intoxicated at that time.

¶ 17 Plaintiffs argued Dodge was untrained for alcohol sales, and he had been working less than two months at Fast Lane when he sold beer to Carothers. Dodge testified he was trained for tobacco sales on the first day he was hired, but not for alcohol other than signing paperwork when he was hired: "And the alcohol I was not trained on, because I believe, they didn't have any kind of training except the paperwork we were—signed and read over as I was getting hired." He also testified he had known not to sell alcohol to a visibly intoxicated person from the time he started working at Fast Lane. In response to the question "had you been trained to spot signs of someone who may be under the influence?" he testified "Yes." He testified a Fast Lane employee should look for an unsteady gait, watery or blood shot eyes, and slurred speech. Dodge stated he had previously refused to sell alcohol to an intoxicated relative, but took no other action. Plaintiffs' exhibit shows a policy labeled "the REFUSE system" to be used when an employee declines to sell alcohol, and employees are also required to call police when an intoxicated driver leaves and intends to drive. Dodge's deposition indicated he did not call police when his relative was refused alcohol. He *appeared* to not understand the meaning of "the REFUSE system" in his deposition, but did indicate his understanding of what he understood to be the proper procedure. Plaintiffs agree Fast Lane has a policy against selling alcohol to a customer who appears intoxicated, but disagree whether this policy was followed when Dodge sold the beer to Carothers.

¶ 18 Plaintiffs' expert witness, a toxicolgist, concluded (1) Carothers blood alcohol content was 0.33 g% (0.33 gm/100 ml) at the time of the sale and (2) Carothers showed gross [visible] signs of intoxication at the time of sale. This witness provided an affidavit providing formulas for calculating Carothers' blood alcohol concentration when he arrived at the Fast Lane to purchase the beer. The formula considers the weight of Carothers, the amount of alcohol he consumed over the period of time, its volume distribution in an adult male, the average rate of alcohol elimination from the body of an adult male and the higher rate of habitual drinkers, and arrived at the figure of 0.33 g% blood alcohol content (BAC). He testified the method of his calculation is "generally accepted."

¶ 19 Plaintiffs' expert also noted that Carothers' "one shot of vodka" at the party could not have raised his BAC to the measured 0.29g% by 11:45 p.m. without him consuming

additional alcohol between 5:00 p.m. and 11:45 p.m.; and Carothers' consumption of "5-6 additional beers" during this time would account for his measured BAC of 0.29g% after the collision.

¶ 20 Plaintiffs' expert testified Carothers' was visibly intoxicated at the time he had a measured BAC of 0.29g% by showing blood-shot eyes, slurred speech, and a staggering gait. The expert stated it was a reasonable inference that because Carothers' had a visible intoxication at a BAC of 0.29g% then such visible intoxication would also be present when Carothers' had a calculated BAC of 0.33g% when the beer at Fast Lane was purchased.

### Commercial Vendor Selling Alcohol to a Noticeably Intoxicated Person

¶ 21 Defendant argues a cause of action does not exist when alcohol is sold by a commercial vendor to an adult for consumption of the alcohol at a location other than the vendor's premises. Does Oklahoma jurisprudence recognize an action against a commercial vendor who sells alcohol to a noticeably or visibly intoxicated adult for consumption off of the premises? Yes, it does.

¶ 22 In *Brigance v. Velvet Dove Restaurant*,[15] this Court held that "one who sells intoxicating beverages for on the premises consumption has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person."[16] In *Tomlinson v. Love's Country Stores, Inc.*,[17] we noted other states "have chosen to extend the common law liability for the illegal sale by vendors of alcoholic beverages to minors for consump-

tion off the premises of the vendor."[18] We reaffirmed *Tomlinson's* place in Oklahoma jurisprudence one year later in *Mansfield v. Circle K Corporation*:[19] "In *Tomlinson*, ... we found that commercial vendors have a duty not to sell beer to a person under the age of twenty-one ... regardless of whether consumption was on- or off-the-premises of the vendor."[20]

¶ 23 In *Tomlinson*, we stated the elements of negligence are: (1) the existence of a duty on the part of a defendant to protect the plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting from the violation.[21] We noted that *Brigance* had found a duty was imposed: (1) by statute prohibiting a vendor from selling to noticeably intoxicated persons and; (2) by common law principles requiring a vendor to exercise reasonable care in selling or furnishing liquor to persons who by previous intoxication may lack full capacity of self-control to operate a motor vehicle and who may subsequently injure a third party.[22]

¶ 23 In an opinion from the Georgia Supreme Court, *Flores v. Exprezit! Stores 98-Georgia, LLC*,[23] a noticeably intoxicated driver purchased a 12-pack of beer from a convenience store, drove off and consumed it with a passenger. Four hours later while driving he crossed the centerline of a highway resulting in a collision in which six people were killed and several injured. The driver's blood alcohol concentration was 0.181 grams per 100 milliliters, twice the legal limit in Georgia. A lawsuit was brought against the convenience store and the court noted a Georgia statute which prohibited any person who "knowingly sells, furnishes, or

---

15. 1986 OK 41, 725 P.2d 300.

16. *McGee v. Alexander*, 2001 OK 78, ¶ 11, 37 P.3d 800, 803, quoting *Brigance*, 725 P.2d at 304. *See also Ohio Cas. Ins. Co. v. Todd*, 1991 OK 54, 813 P.2d 508 (the rule of *Brigance* provides a cause of action to a third party against (1) a tavern owner who served alcohol to an intoxicated adult driver, and (2) an intoxicated adult driver who injured the third party; but *Brigance* provides no cause action to an intoxicated adult driver seeking recovery against the tavern owner).

17. 1993 OK 83, 854 P.2d 910.

18. *Tomlinson*, 1993 OK 83, 854 P.2d at 915.

19. 1994 OK 80, 877 P.2d 1130.

20. *Mansfield*, 1994 OK 80, 877 P.2d at 1133.

21. *Tomlinson*, 1993 OK 83, 854 P.2d at 915.

22. *Tomlinson*, 1993 OK 83, 854 P.2d at 915; *Brigance*, 725 P.2d at 304 ("We, thus, hold that one who sells intoxicating beverages for on the premises consumption has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person.").

23. 289 Ga. 466, 713 S.E.2d 368 (2011).

serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication." The court expressly rejected the argument vendor liability was limited to consumption on the premises.

When a convenience store sells alcoholic beverages to a customer it will often have an opportunity to observe how the customer arrived and, conversely, the manner in which he will depart. Thus, a convenience store may very well know if a customer will soon be driving a motor vehicle. Moreover, the convenience store seller does have an opportunity to observe the customer to determine if he appears to be noticeably intoxicated. ... If a convenience store sells alcohol to such a customer, it is foreseeable that the customer will drive while intoxicated and injure an innocent third party.

*Flores*, 713 S.E.2d at 371.

We agree a convenience store will often have an opportunity to observe how the customer arrived and, conversely, the manner in which he or she will depart, if driving a motor vehicle, and opportunity to observe and determine if noticeably or visibly intoxicated. We also agree if a convenience store sells alcohol to such a customer, it is foreseeable that the customer will drive while intoxicated and injure an innocent third party. We also agree that the vendor's opportunities for observing a person and knowing the *noticeably* intoxicated state will be less when consumption is off the premises. But this lesser opportunity is more of a practical limitation *on a plaintiff* concerning potentially available facts to offer; although the short time frame for vendor-vendee contact makes the plaintiff proving his or her case more difficult, the fact that plaintiff may have "less to work with" to make his or her case does not mean the case cannot be made.

24. 1991 OK 54, 813 P.2d 508.

25. *Ohio Cas. Ins. Co.*, 813 P.2d at 510.

¶ 24 In our 1991 opinion, *Ohio Cas. Ins. Co. v. Todd*,[24] we noted the statutory duty of a commercial vendor of alcohol arising from 37 O.S. 537 not to "sell, deliver or knowingly furnish alcoholic beverages to an intoxicated person." [25] Violation of a statutory duty by a commercial vendor of alcohol was again noted in 1993 as a basis for a *Brigance* action in *Tomlinson v. Love's Country Stores, Inc.*, *supra*. In both *Mansfield v. Circle K. Corp.*, *supra*, (1994) involving a minor's off premises consumption and *McGee v. Alexander*, *supra*, (2001) involving breach of the vendor's statutory duty we discussed negligence per se arising from a violation of a statute (37 O.S. 247) and in the context of a *Brigance* cause of action: "To establish negligence per se on the basis of a statutory violation the party must establish that: 1) the injury was caused by the violation; 2) the injury was of a type intended to be prevented by the statute; and 3) the injured party was of the class meant to be protected by the statute." [26]

¶ 25 In *Brigance* we stated: "We also note that a breach of duty for which we impose civil liability by this opinion constitutes a public offense under 37 O.S.Supp.1985 537.7," a statute which provided a vendor should not knowingly furnish alcoholic beverages to an intoxicated person, and a violation thereof could result in criminal liability. *Brigance*, 725 P.2d at 304. In a subsequent case, *Ohio Casualty Insurance Co. v. Todd*,[27] we quoted from *Brigance* and explained that the duty element to the civil cause of action did not arise *exclusively* from the duty created by statute.

"[W]e find the commercial vendor for on the premises consumption is under *a duty, imposed both by statute and common law principles*, to exercise reasonable care in selling or furnishing liquor to persons who by previous intoxication may lack full capacity of self-control to operate a motor vehicle and who may subsequently injure a third party."

*Ohio Casualty*, 813 P.2d at 511, quoting *Brigance*, 725 P.2d at 303 (emphasis added).

26. *Mansfield*, 877 P.2d at 1132-1133. *See also McGee*, 2001 OK 78, ¶¶ 24-26, 37 P.3d at 806-807.

27. 1991 OK 54, 813 P.2d 508.

Again, we noted the dual sources for the duty element for the civil cause of action.

> In *Brigance*, however, we recognized that 'the concept of duty is one of public policy and is "subject to the changing attitudes and needs of society." ... We must now decide whether public concerns and changing attitudes require this duty to be extended ... [to the party in the civil action].

*Ohio Casualty*, 813 P.2d at 511 (emphasis added, material omitted and added).

In *Ohio Casualty* the Court examined the criminal statute to determine the expressed legislative public policy and then the Court determined whether the vendor liability in a criminal action was a proper yardstick for measuring public policy and vendor liability for a civil action.

¶ 26 In *Brigance* the Court did not equate the elements for criminal statutory liability with the elements for a civil dram shop negligence action. It is certainly correct that in *Brigance* and subsequent opinions courts have looked to the nature of the statutory criminal liability, but not *necessarily* as a major premise to be mechanistically inserted into a categorical deductive syllogism for the purpose of concluding whether civil liability exists. Of course, a *partial* exception to this approach occurred in *McGee v. Alexander*, 2001 OK 78, 37 P.3d 800; where we discussed when the elements required for a violation of statute would rise to the level of negligence per se; and we concluded that because the statute did not attach criminal liability to one of the parties an element for negligence per se was missing and the party was not liable in a civil action.[28]

¶ 27 *Brigance* involved consumption of alcohol on the premises of the commercial vendor. We noted this distinction to be insufficient to insulate a vendor from liability when selling to a minor, and noted the statutory duty in 37 O.S.1991 241 to not sell beer to a minor regardless where the consumption occurred. We focused on the statute showing the existence of a duty with its underlying public policy.

¶ 28 We explained in *McGee v. Alexander*[29] that vendor liability for selling alcohol to minors and intoxicated persons was derived from the statutory duties placed on vendors of alcohol and the sale of alcoholic beverages for profit.[30] We relied on our opinions in *Tomlinson* and *Busby*.

> In *Tomlinson v. Love's Country Stores, Inc.*, 1993 OK 83, 854 P.2d 910, 912, we acknowledged the profit potential for liquor vendors as one of the driving reasons for imposing dram shop liability against the commercial vendor of alcohol: "The Legislature has placed on every vendor who holds a license to furnish alcoholic beverages and a concomitant right of profit from its sale the responsibility to refrain from supplying those beverages to minors or to intoxicated persons." This Court made a similar acknowledgment in *Busby v. Quail Creek Golf and Country Club*, 1994 OK 63, 885 P.2d 1326, 1331, "[t]he public regulates and licenses commercial vendors to sell and distribute alcohol for profit. The public has a right to demand that a commercial vendor act more prudently and with greater duty towards minors than is asked of a private person who hosts a party."

*McGee*, 2001 OK 78, ¶ 13, 37 P.3d at 804.

In *McGee*, we explained 37 O.S.Supp.1996 247 was one basis for establishing a duty and liability for a commercial vendor furnishing low-point beer in violation of that duty.[31]

> No holder of a retail license or permit to sell low-point beer, or an employee or agent of a holder of such a license or permit, shall knowingly, willfully and wantonly sell, deliver or furnish low-point beer to an intoxicated person. Any person violating the provisions of this section shall be

---

**28.** *McGee*, 2001 OK 78, ¶¶ 24-26, 37 P.3d at 806-807.

**29.** 2001 OK 78, 37 P.3d 800.

**30.** The Court declined to extend a *Brigance* duty arising from common law (as opposed to statuto-ry vendor duty) to a social host providing alcohol, and linked the absence of sale for profit with social host status.

**31.** 2001 OK 78, ¶ 32, 37 P.3d at 808.

guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail for a term of not more than six (6) months, or by both such fine and imprisonment. Such violation shall be additional grounds for revocation of any license or permit for the sale of low-point beer as and in the manner provided by law.

37 O.S. 2011 247.

Section 247 was in effect on in May 2012 when the sale of the alcohol to Carothers occurred. Fast Lane has a statutory duty not to sell low-point beer to an intoxicated person. Fast Lane also has a negligence-based duty not to sell low-point beer to an intoxicated person based upon the public policy recognized by this Court in many of its opinions.

¶ 29 While this Court has examined the scope or reach of a statute including certain individuals such as vendors and their agents and then using this inclusion for concluding a proper defendant for a civil action, the Court has not expressly equated the vendor's intent element necessary to violate a statute with the knowledge element in a civil dram shop action. One reason for this is due to the Court's express language linking the knowledge of the vendor for dram shop liability with the knew or should have known standard in negligence jurisprudence and the Court expressly adopting a reasonable care standard. For example, in *Brigance* we expressly adopted for civil liability cases a know or should have known standard, a standard common in negligence cases: "We, thus, hold that one who sells intoxicating beverages for on the premises consumption has a duty to exercise *reasonable care* not to sell liquor to a noticeably intoxicated person. It is not *unreasonable* to expect a commercial vendor who sells alcoholic beverages for on the premises consumption to a person he *knows or should know from the circumstances is already intoxicated, to foresee the unreasonable risk of harm to others who may be injured by such person's impaired ability to operate an automobile."* [32] We expressly adopted a "reasonable care" standard and relied on what a vendor knows or should know.[33] We quoted *Restatement (Second) of Torts* 308 (1965) and its negligence standard: *"It is negligence* to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor *knows or should know* that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."* [34] We again held and made it clear that a civil dram shop action in Oklahoma was a negligence action based upon a vendor's conduct creating "an *unreasonable* risk of harm to others who may be injured by the person's impaired ability to operate a motor vehicle."* [35]

¶ 30 Using reasonableness, specifically a reasonable person standard, does not create vagueness in the law and place a vendor in a position of not knowing what conduct will lead to civil liability. Generally, applying a legal standard of "reasonable" or "reasonableness" to a party is not vague and unenforceable when the context of its application is tied to an objective standard or determination.[36] For example, in the present case a finder of fact (jury or trial judge in a non-jury trial) must determine what a vendor knew or should have known based upon objective facts required to be *produced by the plaintiff* in making his or her case, that is, the *factum probans* (the fact which is stated), *e.g.,* consumption of alcohol, blood alcohol, conduct of the person consuming the alcohol, etc., presented to the finder of fact to prove the *factum probandum* (the factual proposi-

32. *Brigance,* 725 P.2d at 304.

33. *Brigance,* 725 P.2d at 304.

34. *Brigance,* 725 P.2d at 304 (emphasis added).

35. *Brigance,* 725 P.2d at 305 (emphasis added).

36. *Watson v. Weeks,* 436 F.3d 1152, 1163 (9th Cir. 2006), *cert. den., Goldberg v. Watson,* 549 U.S. 1032, 127 S.Ct. 598, 166 L.Ed.2d 431 (2006) (a reasonableness standard [reasonable and adequate rates] was not vague because it was "judicially manageable" by being "tied" to "a benchmark" consisting of a specific factual determination ["of an efficiently and economically operated facility"] ).

tion to be proved)[37] *i.e.*, the person was noticeably intoxicated. Further, the finder of fact must determine the reasonable foreseeability of the proximate causal link between the vendor's conduct in selling the alcohol and the resulting injury.[38] Any claim by defendant herein that applying a "reasonableness" standard is vague because it fails to give notice of what activity is legally condemned is one which rings hollow.

¶ 31 We observed in *City of Jenks v. Stone*, "where there is authority to speak, legislative silence may indicate its intent."[39] When the Legislature is silent after this Court's construction a state statute, then this silence is an acquiescence in this Court's construction and application of the statute. After *Brigance* this Court has been presented with several dram shop cases and our analysis therein utilized reasonableness and negligence standards. In response to the Court's cases, the legislative silence on these standards is deafening as to application of the proper statute and the negligence-based standards applicable in this controversy. Any claim by a defendant that such standards are contrary to a legislative intent is without merit.[40]

¶ 32 We do *not* view a *Brigance* action against Fast Lane as establishing a completely new liability in Oklahoma as argued by defendant. Again, Fast Lane had a statutory duty not to sell low-point beer to an intoxicated person pursuant to a statute. This Court construed this statutory duty in the context of a *Brigance* action in *McGee* and *Mansfield* several years prior to Fast Lane's sale to Carothers. The statutory duty and the similar associated common law duty discussed in *Mansfield* in 1994 involving off-premises consumption by a minor and again in *McGee* in 2001 involving adults and on-premises consumption; taken together serve as guides for a commercial vendor of alcohol easily predicting this Court's holding that a statutory duty prohibiting sale to an intoxicated adult with its similar associated common law duty would be applied to an off-premises consumption when the same or similar statutory duty is involved in a controversy presented to this Court. We expressly reject defendant's conclusion that the statutory duty should not be applied to the commercial sale of alcohol to visibly intoxicated customers at a convenience store when the alcohol is consumed off of the store's premises.

¶ 33 We hold that Oklahoma recognizes a cause of action when a commercial vendor of alcohol sells alcohol to a noticeably intoxicated person for consumption off the premises of the vendor when a person is injured as a result of the vendor violating a statute which prohibits such sales, the injury is of the type to be prevented by the statute, and the individual injured is a member of the class of persons meant to be protected by the

---

**37.** John H. Wigmore, *The Science of Judicial Proof*, 13 (3d ed. 1937).

**38.** *Schovanec v. Archdiocese of Oklahoma City*, 2008 OK 70, ¶¶ 40-41, 188 P.3d 158, 172-173. *See also Moran v. City of Del City*, 2003 OK 57, ¶ 11, 77 P.3d 588, 591. ("In negligence, the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain to occur; or believe that they will. There is merely a risk of such consequences, sufficiently great to lead a reasonable person in his position to anticipate them, and to guard against them.... [Risk is defined] as a danger which is apparent, or should be apparent, to one in the position of the actor.") quoting *Prosser and Keeton on the Law of Torts*, 169, 170 (5th ed. 1984), (material omitted, explanation and emphasis added. In this case we need not participate in the debate *on the extent* to which foreseeability is involved in either the duty or causation elements of negligence.) *See, e.g.*, Dorsaneo, *Judges, Juries, and Reviewing Courts*, 53 S.M.U.

L.Rev., 1497, 1522-1525 (2000), (Dean Green argued that "foreseeability" should be limited to foreseeability of harm and determined by the finder of fact, as opposed to a theory of risks used by the trial judge to determine the existence of a duty).

**39.** *City of Jenks*, 2014 OK 11, ¶ 15, 321 P.3d 179, 183, citing *Zaloudek Grain Co. v. CompSource Oklahoma*, 2012 OK 75, ¶ 7, 298 P.3d 520, 523, in turn citing *City of Duncan v. Bingham*, 1964 OK 165, ¶ 12, 394 P.2d 456, 460.

**40.** *See also In re Estate of Dicksion*, 2011 OK 96, ¶ 5, 286 P.3d 283, 294, quoting *Owings v. Pool Well Service*, 1992 OK 159, ¶ 8, n. 10, 843 P.2d 380, 382 ("Failure to amend a statute after its judicial construction constitutes legislative acquiescence to that construction ... 'Legislative silence, when it has the authority to speak may be considered as an understanding of legislative intent.' ").

statute. We also hold one who sells intoxicating beverages for consumption off the premises has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person.

### Allegations Defendant Violated Its Duty to Plaintiffs

¶ 34 Defendant asserts it is entitled to summary judgment because plaintiffs "do not have any evidence as to how George Carothers appeared when he purchased beer at ASAP/Fast Lane's store even though it is their burden to do so." We disagree with defendant's characterization of plaintiffs' material submitted in response to the motion for summary judgment.

¶ 35 Plaintiffs' case is based upon (1) Carothers' purchase of Miller Lite at Fast Lane during a day when he had previously consumed a known quantity of alcohol, (2) an expert's opinion on the nature of Carothers' appearance earlier in the day when that opinion is based upon a measured BAC, a calculated BAC, and a known/observed behavior of Carothers that is associated with his measured BAC later in the day; and (3) Carrothers' testimony concerning his own behavior.

¶ 36 There is, of course, wide individual variability in alcohol tolerance and at what point of BAC a particular person gives visible signs of intoxication. The mere service or sale of alcohol to an adult is insufficient to show a breach a duty.[41] Some states have discouraged the use of BAC at the time of a collision as *sole* indicator to prove a person must have demonstrated visible signs of intoxication at a time prior to the BAC test; and this approach is consistent with that taken by our Court of Civil Appeals.[42] But other evidence, such as an admission from the intoxicated driver, and observational evidence from a police officer shortly after the improper service of alcohol, or other witness statements may be used to overcome a defendant's motion for summary judgment on the issue whether the driver was visibly intoxicated when served or sold the alcohol.[43] We

41. *See, e.g., Heyler v. Dixon*, 160 Mich.App. 130, 408 N.W.2d 121, 127 (1987) (a breach of duty may be proved by circumstantial evidence and permissible inferences, but the mere fact alcohol was served to an intoxicated person is insufficient in proof because the action is based upon service to a person *visibly intoxicated*).

42. *See, e.g., Douillard v. LMR, Inc.*, 433 Mass. 162, 740 N.E.2d 618, 622-623 (2001) (Because plaintiff's case does not rest solely on an expert's assessment of how the "average" drinker would react to this much alcohol, but on evidence of this driver's reactions to alcohol; and when the record contains such specific information about reactions to excessive consumption, the court need not decide whether expert testimony about the average drinker's response to alcohol would be sufficient.); *Purchase v. Meyer*, 108 Wash.2d 220, 737 P.2d 661, 665 (1987) (A pharmacologist's affidavit relating a measured BAC to what it must have been earlier and concluding the "obviousness" of visible intoxication signs was insufficient to raise an issue of fact relating to visible signs of intoxication for that particular person because different people give different signs of intoxication at different BACs due to "medically recognized variables."); *Battles v. Cough*, 1997 OK CIV APP 62, ¶ 16, 947 P.2d 600, 604 (released for publication by order of the Court of Civil Appeals) (BAC after a collision is insufficient to support an inference of previous noticeably intoxicated state when served alcohol, and summary judgment for vendor affirmed); *Grantham v. The Tulsa Club, Inc.*, 1996 OK CIV APP 38, 918 P.2d 410 (released for publication

by order of the Court of Civil Appeals) (fatal collision and BAC at the time of the collision are insufficient to show service of alcohol to a noticeably intoxicated person, and summary judgment for vendor affirmed); *Frank By and Through Gray v. Merciez*, 1991 OK CIV APP 14, 806 P.2d 1147, 1150 (released for publication by order of the Court of Civil Appeals) (predicted BAC by itself was not indicative of visible, appreciable, and/or noticeable intoxication, and summary judgment for vendor affirmed).

43. *See, e.g., Trigoso v. Correa*, 55 N.Y.S.3d 130, 150 A.D.3d 1041 (2017) (Proof of visible intoxication can be established by circumstantial evidence, including expert and eyewitness testimony.), citing, *Poppke v. Portugese Am. Club of Mineola*, 85 A.D.3d 751, 924 N.Y.S.2d 834 (2011) (same); and *Romano v. Stanley*, 90 N.Y.2d 444, 450, 661 N.Y.S.2d 589, 684 N.E.2d 19, 21-22 (1997) (circumstantial evidence may be used to show visible intoxication, but a visibly intoxicated standard is not met by proof of blood alcohol alone); and *Conklin v. Travers*, 129 A.D.3d at 765, 766, 10 N.Y.S.3d (2015) (stating principle cited in *Trigoso*); *Faust v. Albertson*, 167 Wash.2d 531, ¶ 15, 222 P.3d 1208, 1213-1214 (2009) (en banc) (discussing different types of observations relating to a driver being visibly intoxicated and stating that such raises a question of fact for a jury determination); *Reed v. Breton*, 475 Mich. 531, 718 N.W.2d 770, 776-777 (2006) (visible intoxication focuses on the objective manifestations

used this approach in *Copeland v. Tela Corp.*,[44] when we explained a plaintiff "is still entitled to use inference and circumstantial evidence to prove during trial that Barnes [the driver] was served when noticeably intoxicated." [45] We noted the facts of a BAC, the investigating officer's report of facts, and the particular establishment's "policies, procedures, training, and environment ... *to prevent its employees from recognizing when a patron had become 'noticeably intoxicated,'* " and when considered together indicated a factual issue whether the establishment "knew or should have known" its customer was noticeably intoxicated.[46]

¶ 37 Defendant's reply to the plaintiffs' response states that plaintiffs' expert provided an opinion which "is speculative and assumes facts not in evidence." Defendant states no facts are in evidence showing: (1) The timing of Carothers' drinking specific alcohol while playing golf; (2) Whether Carothers drank the additional alcohol at home prior to purchasing the beer or after; (3) Carothers' state of intoxication between the time he returned to his home after the golf tournament and purchasing the beer; and (4)

Whether Carothers' consumption of the Fast Lane Miller Lite was part of the causal chain of his later intoxication and plaintiffs' injuries.[47] Defendant states "it is uncertain if George Carothers drank additional alcohol at the party in Elk City." Carothers testified in his deposition on this point, and defendant attaches the attribute of "uncertainty" to his testimony.

■ ¶ 38 All of these and similar statements challenge the validity of the opinion given by plaintiffs' expert witness. While it is certainly possible for an expert's opinion to be "so speculative that it is insufficient as a matter of law," [48] this claim is usually addressed in the context whether the expert's testimony is "more than subjective belief or unsupported speculation;" or based on assumptions that are "so unrealistic and contradictory as to suggest bad faith;" or a purely subjective opinion based only on the *ipse dixit* [49] of the expert.[50] An expert's opinion must be based upon what is known,[51] but an expert's opinion may rely on facts or data not admitted in evidence.[52]

of intoxication which may be shown by circumstantial evidence, but it must be evidence of the visible intoxication of the intoxicated person); *Douillard v. LMR, Inc., supra,* note 42. Cf. *Smith v. Teel,* 2008 OK CIV APP 7, 175 P.3d 960 (the facts of a collision, conviction for driving while intoxicated, and witness statement of driver's red eyes and slurred speech *when leaving the restaurant* were not sufficient to create an issue of fact as to whether the driver was noticeably intoxicated *when actually served the alcohol* in a circumstance where driver spent seven hours at the restaurant before leaving).

44. 1999 OK 81, 996 P.2d 931.

45. *Copeland,* 1999 OK 81, ¶ 8, 996 P.2d at 933-934.

46. *Copeland,* 1999 OK 81, ¶ 10, 996 P.2d at 934. *See also Pate v. Alian,* 2002 OK CIV APP 68, 49 P.3d 85 (released for publication by order of the Court of Civil Appeals) (restaurant policy directing employees to serve alcohol to an intoxicated person and self-imposed ignorance of a customer's visible intoxication will not prevent legal liability).

47. Although not expressly labeled as such, some of defendant's assertions raise what is essentially a claim that plaintiffs' reasoning is a *post hoc ergo propter hoc* (after this, because of this) argu-

ment and logically insufficient to show causation because certain evidence of events do not in fact show what plaintiffs' and their expert assert. *See Nelson v. Enid Medical Associates, Inc.,* 2016 OK 69, ¶ 52, 376 P.3d 212, 228-229.

48. *Jones v. Mercy Health Center, Inc.,* 2006 OK 83, ¶ 23, 155 P.3d 9, 15, citing *Thompson v. Presbyterian Hosp., Inc.,* 1982 OK 87, ¶ 12, 652 P.2d 260, 263-64.

49. *Black's Law Dictionary,* 961 (4th ed. 1951) (*ipse dixit,* "He himself said it; a bare assertion resting on the authority of an individual.").

50. *Trouble v. Wet Seal, Inc.,* 179 F.Supp.2d 291, 302 (S.D. N.Y. 2001) citing and quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *General Electric Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); and *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir.1996).

51. *Nelson v. Enid Medical Associates, Inc.,* 2016 OK 69, ¶ 13, 376 P.3d 212, 217.

52. 12 O. S. Supp. 2016 2703 currently provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the

¶ 39 Defendant does not cite any legal authority for the proposition that the opinion is insufficient as matter of law. Defendant does not cite another expert for the proposition that the facts stated in the opinion of plaintiffs' expert as justifying or supporting the opinion are inappropriate or that the method used is scientifically unreliable. Defendant did not file a *Daubert* motion or seek such relief as part of its motion for summary judgment. Defendant is essentially asserting that there is an analytical gap between the data used by the expert and the opinion. By raising other facts defendant is essentially arguing either (1) that a "proper methodology" for the conclusion requires these other "unknown facts" to be known, or (2) no scientific methodology presently exists which is scientifically reliable for asserting the opinion of plaintiffs' expert based upon what is or may be known. The opinion of plaintiffs' expert provides a method and calculations for the conclusions offered. Defendant's bare or *ipse dixit* assertion that such is inadmissible does not demonstrate its inadmissibility, but does show that certain facts were controverted and that reasonable persons might reach different inferences or conclusions upon certain agreed facts.

¶ 40 In *McGee v. Alexander, supra,* a defendant asserted the uncontroverted facts established that it and its personnel had no knowledge, nor any reason to know, the consumer was visibly or noticeably intoxicated.[53] We explained circumstantial evidence can be used to establish whether the vendor knew or should have known of the inebriate's visible or noticeable intoxication.[54] When evidence of noticeable intoxication is conflicting, then summary judgment is not proper.[55] Also, in *Brigance* we explained that ordinarily the question of causation in a negligent tort case is one of fact for the jury and becomes one of law only when there is no evidence from which the jury could reasonably find a causal nexus between the negligent act and the resulting injuries.[56] Defendant's assertion of a lack of a causal nexus must be framed for summary judgment purposes that plaintiff failed to produce any evidence from which a jury could reasonably find a causal nexus, and not as a weight-of-the-evidence argument. This burden was not met. Accordingly, summary judgment was improper in the matter before us.[57]

Conclusion

¶ 41 We hold that Oklahoma recognizes a cause of action when a commercial vendor of alcohol sells alcohol to a noticeably intoxicated person for consumption off the premises of the vendor when a person is injured as a result of the vendor violating a statute which prohibits such sales, the injury is of the type to be prevented by the statute, and the individual injured is a member of the class of persons meant to be protected by the statute. We also hold one who sells intoxicating beverages for consumption off the premises has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person. The facts used for the elements of plaintiffs' cause of action shown by the response to summary judgment and defendant's motion and reply on summary judgment, show contested facts and facts from which reasonable persons might reach different inferences or

---

expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

53. *McGee v. Alexander,* 2001 OK 78, ¶ 33, 37 P.3d 800, 808.

54. *McGee v. Alexander,* 2001 OK 78, ¶ 34, 37 P.3d 800, 808. *See Copeland v. Tela Corp.,* 1999 OK 81, 996 P.2d 931, 933 (plaintiff was entitled to use inference and circumstantial evidence to prove during trial that drunk driver was noticeably intoxicated when he was served at defendant's tavern).

55. *McGee v. Alexander,* 2001 OK 78, ¶ 35, 37 P.3d 800, 808.

56. *Brigance,* 725 P.2d at 305.

57. *Nelson v. Enid Medical Associates,* 2016 OK 69, ¶ 7, 376 P.3d at 216; *Brown v. Patel, supra, Watkins v. Central State Griffin Memorial Hospital, supra, Bird v. Coleman, supra,* note 13.

conclusions precluding summary judgment for defendant.

¶ 42 The opinion of the Court of Civil Appeals is vacated. The judgment of the District Court is reversed and the matter is remanded to the District Court for further proceedings consistent with this opinion.

¶ 43 COMBS, C.J.; KAUGER, WATT, EDMONDSON, and COLBERT, JJ., concur.

¶ 44 GURICH, V.C.J.; WINCHESTER (by separate writing), REIF, and WYRICK (by separate writing), JJ., dissent.

WINCHESTER, J., with whom Reif and Wyrick, JJ., join, dissenting:

¶ 1 I respectfully dissent. After the trial court granted summary judgment to ASAP Energy, Inc., and Fast Lane Stores, Inc., the Court of Civil Appeals, Division I, affirmed. That court concluded, "Oklahoma has not extended dram shop liability to cases involving the facts alleged here." This is a correct statement. That court additionally commented on the factual allegations and their speculative nature, including the supposition that the intoxicated driver, Carothers, who caused death and injury must have also been visibly intoxicated to the clerk of the convenience store five hours earlier when he purchased 3.2 beer from that store.

## I. DUTY OF CARE

¶ 2 In spite of the fact that one trial court judge and three appellate court judges concluded that Oklahoma law had not established a duty of care where a licensed vendor sells alcohol to a consumer for off-premises consumption, the majority opinion holds "Oklahoma recognizes a cause of action" in such a case. I see a real problem with notice to the public here. In *Brigance v. Velvet Dove Restaurant*, 1986 OK 41, ¶ 25, 725 P.2d 300, the Court adopted a new rule of liability creating a new civil cause of action. But the Court prospectively applied the new rule to causes of action accruing from and after the date mandate was issued.

¶ 3 An important function of an appellate court is to provide stability, predictability, and continuity for the community, including businesses, to know how to order their legal affairs.[1] A change in a civil cause of action such as the one presently before us, should at least be prospective, certainly not retroactive. Society must be protected from legal action that at one point carried no penalty, but retrospectively carries a penalty.

## II. ALLEGED FACTS PURPORTEDLY SUPPORTING DENIAL OF SUMMARY JUDGMENT

¶ 4 Even if the plaintiffs were to succeed in establishing a duty of care to injured parties against a convenience store that sold 3.2 beer to one who caused injuries five hours later, how is injury resulting from breach of the duty supported in this case? I see speculation after speculation.

¶ 5 The facts cited by the majority opinion reveal that Carothers does not remember purchasing beer from Fast Lane, yet the facts that this Court reviews for the purpose of summary judgment states he remembers how many beers and how much additional alcohol he consumed. Because beer cans were found on the roadway after the accident, the plaintiffs believe that fact supports an inference that those cans came from Fast Lane. For example, the convenience store owner must have noticed Carothers was intoxicated because an expert assumes the tested amount of alcohol in Carothers's blood would result in a much higher level of alcohol in his blood five hours before. Therefore, because at the accident scene Carothers failed sobriety tests the plaintiffs assume his intoxication must have been substantially more visible five hours earlier. What if the expert was wrong about the time the tortfeasor consumed more alcohol? His intoxication level may have become higher subsequent to being in the convenience store. How much speculation must a trial court accept to be forced to deny a motion for summary judgment? Is an infinitesimal amount enough? Should the

1. Kenneth W. Clarkson, Roger LeRoy Miller & Frank B. Cross, *Business Law Text and Cases*, 2, (14th ed. 2018).

court deny summary judgment based on such creative speculation?

### III.  CONCLUSION

¶ 6 Finally, if duty of care is established, and breach of the duty is established, how is injury resulting from breach of the duty established? Is it through finding beer cans at the scene? Carothers supposedly remembers how much alcohol he drank and when, but does not remember buying the beer from the defendant convenience store. Did he even drink the beer he bought from the convenience store?

¶ 7 I recognize that this is summary judgment, but I do not believe that the speculation asserted by the plaintiffs rises to the level of facts that support a reversal of summary judgment under the law.[2] Deferring to evidentiary materials submitted by the opposing party to a summary judgment is proper, but it should be limited to materials with some substance. Summary judgment procedure should not be changed to treat guesswork as an acceptable substitute for evidence.

¶ 8 Because this case is being remanded, I would think that unless the plaintiffs can prove more than what is presently asserted, a directed verdict is certainly appropriate. "A motion for directed verdict raises the question of whether there is any evidence to support a judgment for the party against whom the motion is made, and the trial court must consider as true all the evidence and inferences reasonably drawn therefrom favorable to the non-movant, and disregard any evidence which favors the movant. A demurrer to the evidence or motion for directed verdict should be granted only if the party opposing the motion has failed to demonstrate a prima facie case for recovery."

*Gillham v. Lake Country Raceway*, 2001 OK 41, ¶ 7, 24 P.3d 858, 860. Inferences must be reasonably drawn. At some point mere speculation does not support denial of a motion for summary judgment, nor denial of a motion for a directed verdict.

---

**2.**  Rules for District Courts of Oklahoma, 12 O.S.Supp.2016, Appendix, Rule 13, Amended by

¶ 9 I would affirm the Court of Civil Appeals opinion.

Wyrick, J., with whom Winchester and Reif, JJ., join, dissenting:

¶ 1 No doubt, George Carothers committed a terrible crime. During the course of his 14-hour drinking binge, Carothers on five separate occasions made the decision to get behind the wheel of his pickup truck and drive drunk, a string of ill-fated decisions that culminated in his running a stop sign and plowing into another car, killing one occupant and seriously injuring two others.

¶ 2 But the question presented by this case isn't whether Carothers should be held responsible for his stupidity and criminality—he has been. The question is whether a convenience store that sold Carothers a nine-pack of beers well into his drinking binge can be held financially liable for the wreck Carothers caused. In concluding that the convenience store owed a duty to those that Carothers hurt, and thus can be sued pursuant to a newly created cause of action, the majority expands the doctrine of dram-shop liability in a way that cannot be squared with that doctrine's roots and rationales. I respectfully dissent.

### I.

¶ 3 Those whose negligence hurts others should be held responsible. When tort law functions well, it furthers this goal by forcing those responsible for injury to others to pay for the damage caused by their negligence. The cause of action we create today, however, is ill-suited to identifying truly culpable parties, and extends liability beyond what the Legislature intended when it prohibited alcohol sales to intoxicated customers.

### A.

¶ 4 The common law traditionally requires that a plaintiff alleging negligence prove: "(1) the existence of a duty on the part of the defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proxi-

---

order of the Supreme Court, 2013 OK 68, eff. August 1, 2013.

mately resulting therefrom."[1] The common law has not historically recognized a cause of action against liquor suppliers for injuries resulting from the actions of their intoxicated patrons because the voluntary act of consumption is the proximate cause of intoxication, and the criminal act of driving under the influence is the proximate cause of any subsequent drunk-driving accident.[2] To account for this lack of common law liability, many states enacted "dram shop acts," creating statutory causes of action against suppliers who overserved patrons who subsequently injured others through their drunkenness. Oklahoma was no exception; just after statehood, the Legislature both banned liquor and created a statutory dram-shop cause of action.[3] That cause of action existed until 1959, when it was repealed by the Alcoholic Beverage Control Act.[4]

¶5 Despite the Legislature's decision to repeal the statutory cause of action, this Court in 1986 created a common law cause of action "by an injured third person against a commercial vendor of liquor for on the premises consumption."[5] Given concerns over the rise of drunk-driving accidents, the Court concluded it was "not unreasonable to expect a commercial vendor who sells alcoholic beverages for on the premises consumption to a person he knows or should know from the circumstances is already intoxicated, to foresee the unreasonable risk of harm to others who may be injured by such person's impaired ability to operate an automobile."[6] In the Court's policy-laden judgment, "the application of the old common law rule of a tavern owner's nonliability in today's automo-tive society is unrealistic, inconsistent with modern tort theories and is a complete anachronism within today's society."[7]

¶6 This was a significant departure from the common law of negligence. In particular, the Court deviated from the common law rule when it held that "the voluntary consumption of alcoholic beverages" was not, as a matter of law, a supervening cause.[8] This was so, it said, because "the consumption, resulting intoxication and subsequent impaired driving ability of an intoxicated patron who is then involved in an accident are *foreseeable intervening causes*."[9] Importantly, however, the Court otherwise retained negligence law's proximate causation element, emphasizing that "a plaintiff must still show the illegal sale of alcohol led to the impairment of the ability of the driver which was the proximate cause of the injury and there was a causal connection between the sale and a foreseeable ensuing injury."[10] Retention of that proximate causation requirement was crucial because it kept the new dram-shop cause of action tethered to negligence law's aim of imposing liability on those who actually cause or contribute to the harm to innocent third parties.

### B.

¶7 Today's decision, however, further departs from the common law of negligence in several significant respects. First, it is unclear whether today's decision recognizes one new duty, or three. The majority first describes a duty not to sell alcohol to a "noticeably intoxicated person," a duty that it says arises from "a statute which prohibits such

1. *Sloan v. Owen*, 1977 OK 239, ¶7, 579 P.2d 812, 814 (citations omitted).

2. See *Brigance v. Velvet Dove Rest., Inc.*, 1986 OK 41, ¶8, 725 P.2d 300, 302 ("At common law a tavern owner who furnishes alcoholic beverages to another is not civilly liable for a third person's injuries that are caused by the acts of an intoxicated patron. Such a rule is principally based upon concepts of causation that, as a matter of law, it is not the *sale* of liquor by the tavern owner, but the voluntary *consumption* by the intoxicated person, which is the proximate cause of resulting injuries...." (footnote omitted)).

3. See Act of March 24, 1908, ch. 69, art. III, 21, 1907-08 O.S.L. 594, 610 (codified at O.S.1910 3629) (establishing Oklahoma's dram-shop cause of action).

4. Tit. 37, ch. 1, 1, 1959 O.S.L. 141, 141, *repealing* 37 O.S.1951 121.

5. *Brigance*, 1986 OK 41, ¶14, 725 P.2d at 303.

6. *Id.* ¶17, 725 P.2d at 304

7. *Id.* ¶15, 725 P.2d at 304.

8. *Id.* ¶23, 725 P.2d at 305.

9. *Id.* (emphasis added).

10. *Id.* ¶21, 725 P.2d at 305 (citations omitted).

sales."[11] But the relevant statutes, 37, O.S. 247, 537,[12] only prohibit "knowingly" or "knowingly, willfully and wantonly" selling to an intoxicated person, a far narrower duty than the duty not to sell to those who are noticeably intoxicated (i.e., those that are capable of being noticed as intoxicated, even if not actually noticed). The majority later muddies the water further, describing a duty "to exercise *reasonable care* not to sell liquor to a noticeably intoxicated person"[13]—applying negligence's "reasonableness" standard to the seller's decision to sell to a noticeably intoxicated person. The indefiniteness of the duty we impose not only deprives sellers of clear notice of what the law requires of them, but it also leaves lower courts without clear guidance as they grapple with new cases filed as a result of today's decision.

¶ 8 Second, the new cause of action to pursue violations of these duties seemingly fails to account for negligence law's requirement that the violation of the duty be the proximate cause of the complained-of harm. On one hand, the majority says the innocent third party must be "injured *as a result of* the vendor violating a statute which prohibits such sales,"[14] which sounds like a proximate cause requirement. But when laying out the elements of its new cause of action, the idea that "a plaintiff must still show the illegal sale of alcohol led to the impairment"[15] disappears: "Oklahoma recognizes a cause of action when a commercial vendor of alcohol sells alcohol to a noticeably intoxicated person for consumption off the premises of the vendor when a person is injured as a result of the vendor violating a statute which prohibits such sales, the injury is of the type to be prevented by the statute, and individual injured is a member of the class of persons meant to be protected by the statute."[16] The only requirement thus seems to be that the seller sold the alcohol to a "noticeably" intoxicated customer who later injures a member of the public, regardless of whether the sale

in any way contributed to the customer's intoxication and subsequent drunken accident.

¶ 9 Third, the inherent nature of sales for on-premises consumption compared to sales for off-premises consumption renders the latter category of cases poor vehicles for identifying truly culpable parties. In the on-premises context, every liability-triggering sale necessarily contributes in part or whole to the customer's intoxication. And because bartenders are uniquely positioned to know whether the customer should be cut off—they mix the drinks, serve them, and otherwise interact with the customer as the drinks are consumed—a dram shop's potential liability is inherently linked to its culpability. A dram shop can thus be liable for the injuries caused by the negligence of a customer because the dram shop's choice to exacerbate the customer's intoxicated state contributed to the customer's negligent and ultimately injurious conduct. The dram shop overserved, the customer drank, the drinking resulted in negligence, and the negligence resulted in harm.

¶ 10 None of this is true with sales of alcohol for off-premises consumption. Because liability only attaches where a sale is made to an already intoxicated customer who cannot legally drink the purchased alcohol until some later point in time,[17] the sale that triggers liability cannot be said to have caused the customer's intoxication—at best it *might* later contribute to his continued intoxication. And in the mine-run of cases, the seller's culpability will not be apparent because, unlike the bartender, a convenience store clerk's interaction with the customer will almost always be exceptionally brief, leaving the clerk poorly situated to make determinations about the customer's state of inebriation. The clerk has not observed the customer's consumption, does not know what alcohol the customer has consumed, and does not know how fast the customer consumed it.

---

11. Majority Op. 33.

12. *See id.* 25, 28.

13. *Id.* 33 (emphasis added).

14. *Id.* (emphasis added).

15. *Brigance,* 1986 OK 41, ¶ 21, 725 P.2d at 305.

16. Majority Op. 33.

17. *See infra* notes 18 and 19 and accompanying text.

And because the law prohibits the customer from drinking the recently purchased alcohol at the store or anywhere else in public,[18] or in a vehicle,[19] the store has a reasonable expectation that the alcohol it sold will not be consumed until the customer has made it to a location where the alcohol can be safely and legally consumed. A sale for off-premises consumption thus fails to serve as an accurate marker of a seller's contribution to the customer's intoxication, and it makes for a liability trigger with little connection to the seller's actual culpability for subsequent harms to third parties.

¶ 11 The sum of all this is a cause of action that can result in arbitrary impositions of liability. If proximate causation is not an element of the cause of action, a drunk customer could walk into a convenience store, buy a single beer, and throw that beer into the trashcan on the way out the door, and if that customer then crashes into someone while leaving the store, the store can be held liable for the harms caused by that accident—this despite the store having not caused the customer's intoxication (the customer was drunk when he walked in), and despite the sale having absolutely no causal nexus to the subsequent drunk-driving accident.

¶ 12 Conversely, if a sober customer walks into the store, buys a case of beer, chugs them all in the parking lot of the store, and then crashes into someone while leaving the store, the store cannot be held liable for the harms caused by the accident because the sale was made to the customer when he was sober. But in such a case, the sale actually *is* the factual cause of the customer's intoxication and subsequent drunken driving.[20] The result is a cause of action that sometimes imposes more liability as culpability decreases, and less liability as culpability increases. This sort of hit-or-miss liability disconnected from actual causation simply does not further tort law's goal of imposing liability on those who actually cause harm to third parties, and it thus cannot be fairly described as a mere extension of traditional dram-shop liability.

## II.

¶ 13 All of this demonstrates the problems that can arise when the Court ventures into the policymaking thicket and departs significantly from common law principles in so doing. By creating a cause of action based on a statutory duty, the Court is substituting its judgment for the Legislature's in deciding whether a civil remedy is warranted for violations of the statute. But when deciding whether to provide a damages remedy for violation of a statute, "separation-of-powers principles are or should be central to the analysis." [21] And "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." [22] This is so because "[i]n most instances ... the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." [23]

---

**18.** *See* 37 O.S.2011 537(A)(8) ("No person shall: ... [d]rink intoxicating liquor in public except on the premises of a licensee of the Alcoholic Beverage Laws Enforcement Commission who is authorized to sell or serve alcoholic beverages by the individual drink or be intoxicated in a public place.").

**19.** *See* 37 O.S.2011 537(A)(7) ("No person shall ... [k]nowingly transport in any vehicle upon a public highway, street or alley any alcoholic beverage except in the original container which shall not have been opened and the seal upon which shall not have been broken and from which the original cap or cork shall not have been removed...."); 21 O.S.2011 1220(A) (virtually the same).

**20.** And what of the drunk customer who buys a case of beer, drives home, goes to bed and wakes up sober, drinks the case of beer, and then drives away from his home and causes an accident? In this case, the sale made by the convenience store actually contributed to the intoxication that caused the accident, but most would agree that the intervening sobriety of the customer and the passage of time should cut off the convenience store's liability. The new cause of action, however, contains no element preventing the imposition of liability in such a scenario.

**21.** *Ziglar v. Abbasi*, ____ U.S. ____, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017).

**22.** *Id.* (internal quotation marks and citations omitted).

**23.** *Id.* (internal quotation marks and citations omitted).

¶ 14 Here, the Legislature created the statutory duty, imposed criminal punishments and civil consequences for its violation, and is uniquely situated to determine whether its policy goals would be furthered by creation of a civil cause of action. The business of regulating those who sell alcoholic beverages is a politically delicate one, as evidenced by the spirited campaigns recently run for and against State Question 792, which ultimately passed and worked a significant re-write of our State's alcoholic beverage laws.[24] In a time when those vested with the policymaking power grapple with important questions about who should be able to sell which alcoholic beverages and where, and what regulations to impose on those sellers, it strikes me as particularly inappropriate for the judiciary to impose a form of regulation that the Legislature and the people have declined to impose.

¶ 15 In the end, today's decision leaves sellers of intoxicating beverages with less regulatory certainty rather than more, and confronts them with near strict liability for violations of an amorphous duty. And all this just after we let stand a lower court decision holding that a business has a duty *not* to call the police to report a customer that the business believes is driving under the influence and is a potential danger to the public.[25] In that case, *Owen v. Walgreen's Pharmacy*, a man who had just undergone outpatient back surgery entered a Walgreens to pick up a prescription. On his way out, the man stopped at the front register to buy a snack. Believing the man was intoxicated due to his stooped-over gait and mannerisms, and fearing he might harm someone on the roads, the cashier called the police and reported him as a possible drunk driver.[26] When stopped by the police, the man was non-compliant, ultimately had to be pepper-sprayed and tased, and was arrested for resisting arrest.[27] The man sued Walgreens claiming that the store negligently made a false police report, and the Court of Civil Appeals held that Walgreens owes a duty to the public "not to make a false report of drunk driving." [28] After Walgreens petitioned this Court for certiorari, we declined by a 5-4 vote,[29] allowing the decision to stand.

¶ 16 Together with today's decision, our recent actions leave business owners adrift, caught between competing duties to ascertain who is drunk before selling them alcohol but never to report those they perceive to be driving drunk, lest they be wrong in that perception. In a society where we encourage those who "see something" to "say something," and where we seek to protect the public by making those who hurt others pay for their actions, this liable-if-you-do-liable-if-you-don't framework will do little to advance public safety and even less to ensure that truly culpable parties are held responsible for their negligent acts.

¶ 17 I respectfully dissent.

**24.** *See generally* State Question 792 (as proposed by Okla. Sec'y of State, July 7, 2016) (to be codified at Okla. Const. art. XXVIIIA, 1-10) (whereby the people voted to re-write Oklahoma's constitutional provisions governing alcoholic beverages), *available at* https://www.sos.ok.gov/documents/questions/792.pdf; Oklahoma Alcoholic Beverage Control Act, ch. 366, 1-168, 2016 O.S.L. 1372, 1376-1486 (to be codified at 37A O.S. 1-101 to 6-128) (whereby the Legislature has rewritten Oklahoma's alcoholic beverage laws pursuant to the authority granted by the people's approval of State Question 792).

**25.** *See generally Owen v. Walgreen's Pharmacy*, No. 115,276, slip op. (Okla. Civ. App. Dec. 23, 2016) (unpublished).

**26.** *Id.* at 2-3.

**27.** *Id.* at 3.

**28.** *Id.* at 8.

**29.** *Owen*, No. 115,276, Order Den. Pet. for Cert. (Okla. May 30, 2017) (Combs, C.J., Winchester, Reif, and Wyrick, JJ., dissenting).